## Carskadden *against* Poorman.

In an action against a justice of the peace, by a parent, to recover the penalty for marrying his minor son, the entry in the family Bible of the son's birth, proved by the oath of the plaintiff, is competent evidence of the minority of the son.

In such action it is competent for the defendant to give evidence tending to show *previous* encouragement or assent of the parent to the marriage; but not *subsequent* indications of his satisfaction therewith.

ERROR to the common pleas of *Clinton* county.

Peter Poorman against James Carskadden, Esquire. This was

[Carskadden v. Poorman.]

an action of debt to recover from the defendant the penalty of 50 pounds, for marrying the minor son of the plaintiff.

After the plaintiff had offered in evidence the notice which the law requires with proof of the service of it upon the justice before suit brought, the defendant objected to it on the ground, that the copy served was not a true copy of the notice offered, because the word " one" in the sentence " he being under the age of twenty-one years," was omitted. But the court overruled the objection and sealed a bill of exception.

The plaintiff then offered in evidence his family Bible, containing the entries of the births and deaths in his family, together with his own testimony of its authenticity. The defendant objected to it on the ground, that it was not the best evidence, and that the plaintiff was not competent to testify to it; but the court overruled the objection and sealed a bill of exception.

The plaintiff having been sworn, said, " this is my family Bible, and the record is the true time of the birth of my children, the entries are in my own handwriting; the entry of the birth of my son Henry (the one who was married) was truly made one or two days after he was born." The entry was then read, " Henry born 14th January, 1818."

The defendant then called a witness, and offered to prove by him that he (the witness) called with the justice previous to the marriage, and told him that Amelia was pregnant by Henry Poorman, and that he must marry them, or issue a warrant to arrest him. This was objected to, and the evidence was overruled.

It was then offered to be proved on the part of the defendant, by the testimony of Henry Poorman and Amelia Poorman, that she, the said Amelia, had lived in the house of the plaintiff (Peter Poorman) more than one year immediately before the marriage; that while she lived there, the said Henry paid his addresses to her, and that the plaintiff knew it. That while the said Amelia was so living with Peter Poorman, she became pregnant by the said Henry, and that she made the fact known to him and that he married her. That since the marriage, the said Peter Poorman has put his son on a farm, treated him and the said Amelia well, and has expressed himself fully satisfied and pleased with the marriage. That since the suit was brought, he said he did not care for the penalty or fine, and if he had the 5 dollars back he gave his attorney, he would drop it, as he was pleased with the marriage, and he was willing to drop the suit, but he supposed his son-in-law would not agree to it. The court rejected the evidence and sealed a bill of exception.

*Fleming*, for plaintiff in error, cited 2 *Watts* 9; 6 *Binn.* 416.

*Armstrong* and *Campbell, contra,* cited 6 *Serg. & Rawle* 136; 1 *Yeates* 15; 4 *Binn.* 326; 2 *Yeates* 441; 5 *Peters* 476; 5 *Cowen* 337.

[Carskadden v. Poorman.]

The opinion of the court was delivered by

ROGERS, J.—The plaintiff assigns as error, the admission of the testimony, in the several bills of exception, and the charge of the court. As to the latter, it must be disregarded, as the general errors without a specification of the points relied on, give no information to the adverse party.

This was an action to recover the penalty of 50 pounds from the defendant, the plaintiff in error, who was a justice of the peace, for marrying the son of the plaintiff, who was a minor, without the consent of the father. To prove that the son was a minor, which was essentially requisite, under the act, it was given in evidence by the testimony of Peter Poorman, the plaintiff, as follows:—

"This is my family Bible; that record, is the record of the birth of my children; the entries are in my own handwriting; the entry of my son Henry's birth (the son alluded to) was made a day or two after the birth. It was truly made." The entry is, "Henry born the 14th January, 1818."

The objections to the testimony are two: that the Bible is not evidence of the time of the birth, though duly proved, and that it cannot be proved by the oath of the party to the suit.

The first exception was not taken at the trial, and has been but little pressed in the argument here.

Evidence of pedigree, of birth, and of death, is somewhat relaxed from necessity, and for these purposes, entries in the register of burials, and the entries of the births and deaths of the members of the family, in a Bible, are always given in evidence without objection. Indeed without reverting to some such sources of information, it would be, in many cases, impossible to prove the pedigree, or the time, either of the birth or death, of obscure individuals. Experience has shown, that it is less exceptionable, and more to be depended on, than the frail recollections or memory of strangers, of such facts as are alone interesting to the parents, or the immediate members of the family.

But although there can be no doubt, that the entries when duly proved, are evidence, yet it is not so clear, that the party in interest, is a competent witness to authenticate the book, and prove the entries. No case has been cited, nor is any known, where the point has been directly decided.

It may be laid down as a general rule, that when the evidence is not to the court, but to the jury, the party in interest is not a competent witness; but this though a general, is not a universal rule. In Garwood *v.* Dennis, 4 *Binn.* 326, it is said, "Necessity, either absolute or moral, is sufficient ground for dispensing with the usual rules of evidence." Thus, in this country, from necessity, the party is competent to prove his book of original entries, and there would seem to be an equal necessity here. Without resorting to the testimony of the parents, it would be, in many cases, very difficult to authenticate the family record. It is believed, there is but

little danger which can arise from such proof, accompanied as it is by the book itself, which is open to the inspection of the jury. An attempt to fabricate an entry, to subserve a particular purpose, would be easily detected, and it is difficult to believe that there is any thing to fear from a false entry, made at a distant period of time, to answer a contingent purpose. When entered at the time it purports to bear date, it is liable to no objection, and there is no evidence on which a jury would place more implicit reliance.

The defendant was permitted to give any evidence which tended to show the assent of the father to the marriage, or that he encouraged it; and for this purpose, he was allowed to prove, that the son's wife lived at the house of the father, previous to the marriage, that he knew he visited her, and that he, the son, thought a good deal of her. But they refused to admit evidence, that since the marriage, the father had put the son on a farm, and had expressed himself well satisfied and pleased with the match. In this the court have taken a sound and proper distinction. We cannot perceive, in what respect, such testimony conduces to prove, either an encouragement, or a previous assent to the marriage. It is a matter of no sort of consequence, so far as any inquiry into the improper conduct of the justice is involved, whether the parent is well or ill pleased, or whether the match be good or bad. The act was intended to prevent clandestine marriages, and for this purpose has imposed upon the justice a proper penalty, for marrying or joining in marriage, any person under twenty-one, without the assent of the parents. It is intended as a punishment of the offender, rather than a compensation to the parent, and to make this depend on the fitness or unfitness of the match, would lead to indecent and worse than fruitless inquiries. Nor is a good reason perceived, why the act should be eluded, because the kind and tender feelings of the parent, induce him to receive into favour an erring child, and to supply him with the common necessaries or comforts of life. Such testimony, by the encouragement it would give to angry passions, would produce infinite mischief which the court, by their decision, have properly prevented.

The defendant further offered to prove, that the son communicated his marriage to his father shortly after it took place, and what he said about it. The offer was evidently too general. The defendant should have specified what was said, and if it tended to prove assent or encouragement, on the authority of the case of Rodelsough *v.* Sands, 2 *Watts* 9, it would have been evidence. But as it stands, it is but little more than the repetition of the offer of evidence, which in another shape had been properly rejected.

The objection to the notice is too refined, nor can we see any thing in the charge of which the defendant has the slightest reason to complain. There is convincing evidence of every fact necessary to maintain the suit, viz:—that the son was a minor, and that the

X.—H*

defendant, who was a justice of the peace, joined him in marriage without the consent of his parents.

Judgment affirmed.