CRANDALL *vs.* VICKERY, administratrix, &c. impleaded with Holdridge.

Indorsements of promissory notes were obtained by false representations on the part of the maker, who fraudulently diverted such notes from the purpose for which they were made, and transferred them to the plaintiff, and the latter gave therefor his checks, payable at future periods; it being agreed between the parties that such checks should not be presented at the bank, but that when the money was wanted they should be returned to the plaintiff, and new checks given. This arrangement was subsequently carried out. But before the checks had been presented or exchanged, and before any thing had been paid, or was to be paid, the plaintiff was informed, by the indorser, of the fraud which had been practiced, and was requested not to pay or advance any more money on the notes to the maker. *Held* that the plaintiff was not a *bona fide* holder of the notes, as against the indorser; he having parted with nothing, and paid no valuable consideration therefor, until after he was notified of the fraud.

APPEAL from a judgment entered upon the report of a referee, in an action upon a promissory note, brought against Pliny B. Holdridge as maker and John Vickery as indorser. The referee reported that upon the trial the following facts were established by the evidence and the admissions of the respective parties, viz : That prior to the 4th of June, 1862, Vickery (who died after the commencement of the suit,) had indorsed a note of $1000, made by one Pliny Holdridge, and for the accommodation of the latter, which was at the date above mentioned held by the Union Bank, in Rochester. That said note was at the time last mentioned past due, and had been protested, and suit commenced upon it. That on the said 4th of June, Holdridge applied to Vickery and represented to him, that he had made an arrangement with the Commercial Bank in Rochester, to discount his notes, indorsed by Vickery for $1100, with which he designed to pay the note at the Union Bank aforesaid, with interest and costs, and also a small account of Vickery against him, amounting to about $36, for borrowed money. That he thought he could get a part of the discount on three months' paper, and with a view to this, as he stated, requested Vickery to in-

dorse three notes, one for $500, and two for $600 each; one of the latter of which was to run for two months, and the other for three months, from that date, one to be discounted under the arrangement aforesaid, (the one having the longest time to run if possible,) and the other to be returned to Vickery and canceled. That Vickery, relying upon these representations and promises, did then and there indorse said three notes, according to the request of Holdridge, and for the purpose aforesaid, and no other. That the said notes, of $600 each, then indorsed, are the same notes now held by the plaintiff, and one of which is described in the complaint in this suit. The referee found as fact from the evidence, that the representations of Holdridge to Vickery, above mentioned, were wholly false, and known to be false by Holdridge at the time aforesaid, and that said representations and assurances were made with the purpose of defrauding Vickery. It was further proved, that on or about the 20th of June, 1862, the said Holdridge made a note of $500 payable at the Farmers and Mechanics' Bank in Rochester, sixty days from date, to the order of one W. B. Hibbard, a relative of his, and procured the same to be indorsed by said Hibbard; that the latter at the time of indorsing said note or shortly after, suggested to Holdridge that he ought to have security, and Holdridge said he should have it. That on or about the 29th of the same month, the said Hibbard indorsed a second note made by Holdridge, and like the first in all respects except the date; that at the time of indorsing this note, Hibbard made the same suggestions as to security, and received the same reply. That no security was given at the time of indorsing said notes, or either of them in fact, or subsequently, except as hereinafter stated. That said notes were both discounted by the Farmers and Mechanics' Bank, and the money arising therefrom paid to Holdridge. That Holdridge, after obtaining the indorsement of Vickery as aforesaid, went to Michigan, taking the two notes of $600 each, above mentioned, with him. That on or about the 22d

day of July, he enclosed one of said notes in a letter, ad-·-dressed to his son in Riga, and another to one Mudge, also a relative of his, in Rochester; that said letters were not put in evidence, but the notes were delivered to Hibbard on or about the 28th or 29th of July, according to the memorandum made by said Hibbard at the time of the delivery of one of them, on the following terms and conditions, "as security for and against all damages that he (Hibbard) may be subjected to by and for the indorsement of any note for P. B. Holdridge." That on the 29th of July, 1862, Hibbard applied to the plaintiff and told him that he wanted to realize on the notes indorsed by Vickery, at a future time, when the notes indorsed by him (Hibbard) aforesaid, and in the Farmers and Mechanics' Bank, matured. That the first note would mature in a few days, as he supposed, and the other in about a month from that time. That Holdridge, the maker, had sent these two notes to him, Hibbard, to take up the two notes of $500 each, indorsed by him, as above mentioned. The plaintiff in reply said that the notes with Vickery's indorsement amounted to more than the notes indorsed by Hibbard, and inquired to whom does the balance belong? Hibbard said to him, and you can pay me when convenient. The plaintiff then said, I will take the notes and furnish the $1000, and when you want the balance, call and get it. The plaintiff then called for two checks which he filled up on the Monroe County Bank, for $500 each, payable to said Hibbard or bearer, one of which was dated the 29th of July, 1862, the other post dated the 29th of August, 1862, which he signed, with a request that they should not present them at the bank, but when they wanted to use the money he would take up those checks and give new ones from his check book at his office, as he there kept a memorandum of checks drawn upon this bank. This was assented to by Hibbard and Mudge, at whose store in Rochester the interview took place. Hibbard did not know precisely when the first note indorsed by him for Holdridge matured. The

Crandall *v.* Vickery.

plaintiff said he would give Mudge (who was to act for Hibbard in taking up the notes at the Farmers and Mechanics' Bank,) a check when the first note became due. The checks then signed, as above mentioned, were handed to Mudge, and the notes with Vickery's indorsement delivered to the plaintiff. It was further proved, that the two notes indorsed by Hibbard aforesaid, matured respectively on the 23d and 29th of August, 1862. The first note was duly protested when due, and a suit commenced, which was settled and paid by the proceeds of a note made by Hibbard, and indorsed by one Chamberlain, for about $500, payable at the Farmers and Mechanics' Bank, in thirty days from the date thereof. That the plaintiff was not informed of this proceeding, nor had he any notice thereof. It was further proved, that on the 7th day of August, 1862, the note in suit, was duly protested and that on the following day the agent and attorney of Vickery called upon Crandall, the plaintiff, and ascertaining from him that he held the two notes of $600 each, indorsed by Vickery, as aforesaid, then and there informed the plaintiff of the manner in which the indorsement of Vickery had been obtained, and the particulars of the fraud practiced upon the indorser by Holdridge, as above mentioned, and requested him not to advance or pay any more money on account of said notes to Hibbard; to which communication the plaintiff replied, that he could not help that; that he paid $1000 towards the notes, and should pay the balance of $200, according to his agreement, when called upon. That full notice of the fraud aforesaid was given about the same time to Hibbard. It was also proved that Mudge, with whom said checks signed by the plaintiff had been left, as aforesaid, on the 29th of August, 1862, surrendered those checks to the plaintiff, in pursuance of the arrangement made on the 29th of July, and after deducting the amount specified in said checks, the sum of $80 due from Mudge to the plaintiff, received a check for $420, and another for $502.68, including interest, both upon the Monroe County Bank, and made payable to said Hibbard

or bearer.   That said checks last mentioned, were each dated on the 29th August, 1862.   That the plaintiff, from the 29th July to the time said checks were given, had funds in said bank sufficient to meet said checks, one or both of them. That said checks were presented by Hibbard and paid in September, and the avails thereof applied to take up the notes indorsed by Hibbard, or the one substituted for the note sued, as aforesaid.   That the balance of $200 was never called for by Hibbard or paid by the plaintiff.   It was further proved that Vickery was a well known man of business residing in Rochester, and entirely responsible.   That Holdridge and Hibbard were each of them in embarrassed circumstances, and the former entirely unable to meet his pecuniary engagements.   That no application was made to or inquiry addressed to Vickery in reference to the notes so indorsed by him, at any time, either by Hibbard or the plaintiff, prior to the 29th of August aforesaid, except the interview above mentioned between the plaintiff and the agent of Vickery.   The death of John Vickery after this suit was commenced, and the rights of the defendant as administratrix, &c. were admitted by the plaintiff.   The referee found as a conclusion of fact and law, that Hibbard was not at any time a bona fide holder for a valuable consideration of said notes, indorsed by Vickery, or either of them, as against the latter.   That the plaintiff not having paid any thing for or on account of said notes, until after notice of the fraud of the maker upon the indorser, is not, and was not, at the commencement of this suit, a bona fide holder of said notes, or either of them, for value, as against the indorser thereof. And that the administratrix of John Vickery was entitled to judgment for costs.

From the judgment entered in accordance with this report, the plaintiff. appealed.   .   .

*J. L. Angle,* for the appellant.

*T. R. Strong,* for the respondent.

Crandall *v.* Vickery.

*By the Court,* JOHNSON, J.   The important question in this case is, whether the plaintiff was a *bona fide* holder of the notes in question, for a valuable consideration.   That he had no notice of any fraud on the part of any one connected with the notes or of any infirmity in the notes, is expressly found.

The referee found as a conclusion of law from the facts established, that he was not a holder for a valuable consideration, as against the indorser.   The notes were clearly transferred to the plaintiff in fraud of the rights of the indorser, and they can not be enforced against him or his representatives, unless the plaintiff is a *bona fide* holder for value. The plaintiff gave his checks for the amount of both notes, upon a bank in which he had sufficient funds for their payment at the time they were given, and at the time contemplated between the parties for their presentment, or for the presentment of their substitutes for payment.   One of these checks was dated at the time of the transfer of the notes to the plaintiff, and the other was delivered at the same time, though it bore date about one month in advance of that time. It was expressly agreed, though verbally, between the parties to the transaction, that these checks should not be presented at the bank; but that when the money was wanted for the purpose of taking up the notes indorsed by Hibbard, they should be returned to the plaintiff and new checks given from his check book.   The notes indorsed by Hibbard fell due respectively, on the 23d and 29th of August, after the transfer, and did not equal the amount of the two notes transferred to the plaintiff into about the sum of $200.   This verbal arrangement in regard to holding and returning the checks, and taking new ones as the said notes should fall due, was subsequently carried out.   The new checks were given and the notes taken up therewith as the notes fell due respectively. The excess of two hundred dollars the plaintiff still retains, never having paid it to any one, and no one having requested him to pay it.   Before the checks had been presented or ex-

changed, and before any thing had been paid or was to be paid according to the arrangement, the plaintiff was fully informed of the fraud which had been practiced and of all the circumstances, by the defendant's intestate, and was requested not to pay or advance any more money on them, or on account thereof, to Hibbard. The plaintiff thereupon told Vickery he had paid $1000, toward the notes, and should pay the remaining $200 when called upon, as he had agreed. At this time no money had been paid, and nothing given in exchange for the notes but the two checks which were then outstanding under the agreement that they should be returned and exchanged for other checks. These checks were returned and the new checks given, according to the verbal arrangement, after the plaintiff was notified as above stated.

I am clearly of the opinion that the referee decided this question correctly, and that the plaintiff was not a *bona fide* holder of these notes for a valuable consideration. According to all the decisions in this state a valuable consideration, in a case of this kind, consists in something of value parted with before notice of the fraud. It is unnecessary to cite any other authorities than the leading cases of *Coddington* v. *Bay*, (20 *John*. 636,) and *Stalker* v. *McDonald*, (6 *Hill*, 93.) These decisions have never been departed from by our courts, and must be regarded as the settled law. It is claimed, however, by the plaintiff's counsel, that in giving these checks, which imparted and constituted a legal obligation against him, he did part with something valuable as matter of law, and without any notice of the fraud affecting the indorsement.

But in determining this question as it is presented in this case, we must look at the entire arrangement in all its parts and bearings, for the purpose of ascertaining what was intended and contemplated by the parties at the time the arrangement for the transfer of the notes to the plaintiff was made — what was the real transaction beyond the mere form. Looking at it in this view, it is seen that it was not contemplated by the parties, or intended, that these checks then

given should ever be presented or paid. They were never in fact presented, and nothing was ever advanced on them. The money was paid on other checks, substituted for the first, according to the arrangement first made. At the time, therefore, when the plaintiff was fully notified of the fraud, he had only these checks outstanding, which were not to be presented, but which were to be returned to him at a future day. One of them was ante-dated and could not then have been presented. Neither of them, as is most manifest, ever operated or were intended to operate, as an assignment of so much of the plaintiff's funds in the bank. The arrangement bears evidence upon its face of having been only intended to be a special temporary arrangement, put in this form as evidence of the real agreement, which plainly was, that the plaintiff, whenever the notes indorsed by Hibbard should fall due and his contingent liability as indorser should become fixed and absolute, should, for the notes in question, advance a sufficient sum to take up the notes so indorsed by Hibbard, and pay him the balance of $200 whenever thereafter he should call for it.

If Hibbard's liability as indorser should never become fixed, the arrangement obviously did not contemplate the present-ment and payment of the checks, at all. The first checks, therefore, were not intended to create an absolute uncondi-tional liability against the plaintiff. It was not expected they would be presented, or their payment enforced. The whole transaction, at that time, rested in this loose executory agreement, to be performed at some future time, altogether uncertain in the minds of the parties. It seems to me plain from this, that nothing valuable had been parted with by the plaintiff at the time the notice was given. The real obliga-tions upon which the money was advanced were given long afterwards, and at a time when their date, and presentment, and payment, would afford the plaintiff no protection.

It does not appear to me to be any answer to this view, to say that these first checks purported on their face to be legal

and valid checks, and might have been presented, and their payment enforced, as between the plaintiff and Hibbard. Technically this may be so. But looking beyond this, we see that the arrangement, the real agreement understood and ultimately acted upon, and carried out, was altogether different. By that nothing was parted with, or intended to be. It all rested substantially in the parol executory agreement. In pursuance of that, the first checks were returned, and were never presented or sought to be enforced, in strict accordance with the terms and spirit of the agreement as a whole.

Beside this, the transaction, as it appears from the finding, strikes me as quite unusual and out of the ordinary course of dealing in the purchase of commercial paper. I do not, however, lay any considerable stress upon this circumstance, but prefer to place the decision upon the broad ground, that upon all the facts, the plaintiff had really parted with nothing, had paid, in short, no valuable consideration for the notes, until after he was notified of the fraud. I am of the opinion, therefore, that the judgment should be affirmed.

[MONROE GENERAL TERM, December 4, 1865. *Johnson, E. Darwin Smith* and *James C. Smith*, Justices.]