### DRESSER *v.* MISSOURI AND IOWA RAILWAY CONSTRUCTION COMPANY.

A *bona fide* holder of negotiable paper, purchased before its maturity upon an unexecuted contract, on which part payment only had been made when he received notice of fraud, and a prohibition to pay, is protected only to the amount paid before the receipt of such notice.

ERROR to the Circuit Court of the United States for the District of Iowa.

Submitted on printed arguments by *Mr. James Grant* for the plaintiff in error, and by *Mr. George G. Wright, contra.*

MR. JUSTICE HUNT delivered the opinion of the court.

This action is brought upon three several promissory notes made by the Missouri and Iowa Railway Construction Company, dated Nov. 1, 1872, payable at two, three, and four months, to the order of William Irwin, for the aggregate amount of $10,000.

The defence is made that they were obtained by his fraudulent representations.

But a single point requires discussion. Conceding that the present plaintiff received the notes before maturity, and that his holding is *bona fide*, the question is as to the amount of his recovery.

Under the ruling of the court he recovered $500. His contestation is, that he is entitled to recover the face of the note, with interest.

After the evidence was concluded, the plaintiff asked the court to charge the jury, that if they believed, from the evidence, that the plaintiff purchased the notes in controversy of William Irwin for a valuable consideration, on the 1st of November, 1872, and paid $500, part of the consideration, on 21st of January, 1873, before any notice of any fraud in the contract, he was entitled to recover the whole amount of the notes; and the court refused this instruction. But the court charged the jury, —

" That, in the first place, the jury must find that there was fraud in the inception of the notes as alleged; and that if the defendants failed to satisfy the jury of that fact, the whole defence fails.

" That if the fact of fraud be established, and the jury find from the evidence that the plaintiff paid $500 upon the notes without notice of the fraud, and that after receiving notice of the fraud the plaintiff paid the balance due upon the notes, he is protected only *pro tanto;* that is, to the amount paid before he received notice."

It does not appear that, upon the purchase of the notes in suit, the plaintiff gave his note or other obligation which might by its transfer subject him to liability. His agreement seems to have been an oral one merely, — to pay the amount agreed upon, as should be required; and he had paid $500, and no more, when notice of the fraud was brought home to him.

The argument of the plaintiff in error is that negotiable paper may be sold for such sum as the parties may agree upon, and that, whether such sum is large or small, the title to the entire paper passes to the purchaser. This is true; and if the plaintiff had bought the notes in suit for $500, before maturity

and without notice of any defence, and paid that sum, or given his negotiable note therefor, the authorities cited show that the whole interest in the notes would have passed to him, and he could have recovered the full amount due upon them. *Fowler* v. *Strickland*, 107 Mass. 552; *Park Bank* v. *Watson*, 42 N. Y. 490; *Bank of Michigan* v. *Green*, 33 Iowa, 140. The present case differs from the cases referred to in this respect. The notes in question were purchased upon an unexecuted contract, upon which $500 only had been paid when notice of the fraud and a prohibition to pay was received by the purchaser. The residue of the contract on the part of the purchaser is unperformed, and honesty and fair dealing require that he should not perform it; certainly, that he should not be permitted, by performing it, to obtain from the defendants money which they ought not to pay. As to what he pays after notice, ne is not a purchaser in good faith. He then pays with knowledge of the fraud, to which he becomes a consenting party. One who pays with knowledge of a fraud is in no better position than if he had not paid at all. He has no greater equity, and receives no greater protection. Such is the rule as to contracts generally. In the case of the sale of real estate for a sum payable in instalments, and circumstances occur showing the existence of fraud, or that it would be inequitable to take the title, the purchaser can recover back the sum paid before notice of the fraud, but not that paid afterwards. *Barnard* v. *Campbell*, 53 N. Y. 73; *Lewis* v. *Bradford*, 10 Watts, 82; *Juvenal* v. *Jackson*, 2 Harris, 529; id. 430; *Youst* v. *Martin*, 3 S. & R. 423, 430.

In *Weaver* v. *Barden*, 49 N. Y. 291, the court use this language: " To entitle a purchaser to the protection of a court of equity, as against a legal title or a prior equity, he must not only be a purchaser without notice, but he must be a purchaser for a valuable consideration; that is, for value paid. Where a man purchases an estate, pays part and gives bonds for the residue, notice of an equitable incumbrance before payment of the money, though after giving the bond, is sufficient. *Touville* v. *Naish*, 3 P. Wms. 306; *Story* v. *Lord Windsor*, 2 Atk. 630. Mere security to pay the purchase price is not a purchase for a valuable consideration. *Hardingham* v. *Nicholls*, 3 Atk. 304; *Maundrell* v. *Maundrell*, 10 Ves. 246, 271; *Jackson* v. *Cadwell*,

1 Cowen, 622; *Jewell* v. *Palmer*, 7 J. C. 65. The decisions are placed upon the ground, according to Lord Hardwicke, that if the money is not actually paid the purchaser is not hurt. He can be released from his bond in equity."

The plaintiff here occupies the same position as the *bona fide* purchaser of the first of a series of notes, of which, after notice of a fraud, he purchases the rest of the series. He is protected so far as his good faith covers the purchase, and no farther.

Upon receiving notice of the fraud, his duty was to refuse further payment; and the facts before us required such refusal by him. Authorities *supra.*

*Crandell* v. *Vickery*, 45 Barb. 156, is in point. Holdridge had obtained the indorsement by Vickery of his (Holdridge's) notes by false and fraudulent representations. These notes were transferred to Crandell without notice or knowledge of the fraud, he giving to Holdridge several checks for the amount, upon the understanding that they were not to be presented for payment, but when the money was wanted, he was to give new checks as needed. Before giving the new checks, plaintiff was informed of the fraud, and requested not to make payment, or to give his checks. He did, however, give his new checks, according to the original agreement, and brought suit upon the notes against Vickery, the indorser.

It was held that he was not a *bona fide* holder, for the reason that the transaction was executory when he received notice of the fraud; that he had then parted with no value; that the real obligations were given afterwards, and under circumstances that afforded no protection.

That case is stronger for the holder than the one before us, in the fact that checks were there given on the original transaction, which might have been presented or passed off to the prejudice of the maker; while here the transaction was oral throughout.

To the same purport in principle, although upon facts somewhat different, are the cases of *Garland* v. *The Salem Bank*, 9 Mass. 408, *The Fulton Bank* v. *The Phœnix Bank*, 1 Hall, 562, and *White* v. *Springfield Bank*, 3 Sandf. S. C. 227.

The cases are numerous that where a *bona fide* holder takes a note misappropriated, fraudulently obtained, or without con-

sideration, as collateral security, he holds for the amount advanced upon it, and for that amount only. *Williams* v. *Smith*, 2 Hill, 301.

In *Allaire* v. *Hartshorn*, 1 Zabr. 663, the case was this: Hartshorn sued Allaire on a note of $1,500 at ninety days, made by Allaire. It was proved that the note had been misapplied by one Pettis, to whom it had been entrusted; that he had pledged it to the plaintiff as security for $750 borrowed of him on Hegeman's check, and also as security for a $400 acceptance of another party then given up to Pettis.

On the trial, the court charged the jury, that, if any consideration was given by the plaintiff for the note, "they should not limit their verdict to the amount so given, but should find the whole amount due on the face of the note." The case was carried to the court of errors and appeals of the State of New Jersey, upon an exception to this charge. The court reversed the judgment, holding that, although a *bona fide* holder, Hartshorn could recover only the amount of his advances.

The case before us is governed by the rule that the portion of an unperformed contract which is completed after notice of a fraud is not within the principle which protects a *bona fide* purchaser.

No respectable authority has been cited to us sustaining a contrary position, nor have we been able to find any. The judgment below is based upon authority, and upon the soundest principles of honesty and fair dealing. It has our concurrence, and is affirmed.