LINCOLN ALLIANCE BANK v. LANDERS CO., Inc., et al.

(District Court, S. D. Texas, at Houston. May 12, 1923.)

No. 527.

Bills and notes ☞334—Holder in due course, though possessing payee's funds, may recover from maker, though there is failure of consideration.

Where a bank was a bona fide purchaser of a note before maturity, that after the bank had learned of a failure of consideration between payee and maker, and after maturity of the note, bank had funds of payee on deposit, and failed to protect itself with them, will not prevent the bank from recovering from maker.

At Law. Action by the Lincoln Alliance Bank against the Landers Company, Inc., and others. On plaintiff's demurrer to the answer. Demurrer sustained.

Judgment affirmed 298 Fed. 79.

Baker, Botts, Parker & Garwood, of Houston, Tex., for plaintiff.
W. J. Howard, of Houston, Tex., for defendants.

HUTCHESON, District Judge. This is a suit by the Lincoln Alliance Bank on a negotiable promissory note, executed by Landers Company, Inc., in favor of Rosenberg Bros. & Co., clothiers, of Rochester, N. Y., and indorsed by the payee to the Lincoln Alliance Bank for value received on August 7, 1922.

The only defense asserted in the answer of the defendants is that the consideration of the note has failed by reason of the breach on the part of Rosenberg Bros. & Co. of their agreement to advertise the brand of clothes sold to Landers & Co. and to assist them in finding a retail market, and that this defense was available against the Lincoln Alliance Bank, because that bank has since the maturity of the note on September 3, 1922, and since said note was transferred to it by said Rosenburg Bros. & Co., "had on deposit moneys and property of the said Rosenberg of more than the amount of said note sued on herein, and the said plaintiff, Lincoln Alliance Bank, was on or about the 16th day of September, 1922, notified by the defendants of their defenses to the said note, and alleged failure of consideration, and was requested and directed by these defendants to take the necessary steps to protect itself against loss."

It is further alleged that the note was obtained by causing Landers Company to put in that form a pre-existing open indebtedness of $13,-000 incurred in reliance upon the performance of the advertising contract, and without advising Landers Company that Rosenberg Bros. intended to cancel said advertising contract, though the said Rosenberg Company, at the time of securing the note, had that intention in mind; that therefore, not only has the consideration of the note failed, but the note itself was procured by fraud, the $13,000 of open account not being due, under the understanding of the parties, unless and until the contract was performed.

To this answer plaintiff has demurred, and the hearing is upon that demurrer. The issue sharply presented, then, is that, though a bank may be an innocent purchaser for value, by its purchase of a note from one of its customers, and the crediting of his account with the amount, yet, since the doctrine of innocent purchase is for the protection of persons who would otherwise lose, is intended as a shield to one who on the faith of its regularity has taken negotiable paper, and not as a sword to enable a creditor to enforce the payment of an unjust debt, when it is made to appear that the bank had been notified of the unjust character of the paper before maturity, and at the time of maturity and dishonor it had funds on hand with which it could have protected itself by sequestrating the indorser's deposit, it ought not to be permitted to pursue the maker, but should be required to protect itself, and leave the maker and the fraudulent indorser to litigate between themselves.

Counsel for plaintiff concedes that the Supreme Court of Texas is committed to the doctrine which defendant invokes, and in support of which he cites the late opinion of Second National Bank v. McGehee,

241 S. W. 287, opinion by the Court of Civil Appeals, with writ of error denied by the Supreme Court. Counsel for plaintiff asserts, however, that this holding is paralleled in no other jurisdiction; that, this being a case of law merchant, the federal courts are not bound by such decision; and that it constitutes a character of exception to the body of the law which does not commend itself for adoption.

Counsel for defendant asserts that, not only is this the rule in Texas, but that the Circuit Court of Appeals for this Circuit, in Simmons v. Hodges, 250 Fed. 424, 162 C. C. A. 494, has held the same thing on the authority of the Van Winkle Gin Co. Case, 89 Tex. 147, 33 S. W. 862, which is the basis of the McGehee Case, and of Dresser v. M. & I. Co., 93 U. S. 92, 23 L. Ed. 815. To this counsel for plaintiff rejoins that defendant's construction of the Simmons Case is not correct, but, if so, it constitutes an aberrance from the general body of the law, which ought to be followed only in so far as it is compulsory and only in the very track which it has hewn out.

My conclusions on the matter may be briefly stated thus:

(1) I am of the opinion that, before the adoption of the Negotiable Instruments Law, uniformity of decision throughout the United States in the matter of commercial paper was not only desirable, but essential, to freedom of commerce, and that that adoption was brought about for that purpose. That amendment to the Constitution of the United States which, next to the Fourteenth, has given rise to more litigation over the validity of state statutes than any other, that no state shall pass a law impairing the obligation of a contract, had its inspiration in the troubles arising out of commercial paper, and especially notes of issue. And not only is it true that there should be uniformity of decision in the United States, but the law of negotiable paper, like admiralty, ought to be the freest from any local laws or decisions of states, and should approach universality.

Negotiable paper originally smelt as much of the sea almost as ships themselves, because it was on such paper that commercial ventures were founded, bottoms were set afloat, and many a Shylock financed many an Antonio, and took his paper in return in the days when most of the commerce was conducted by men who went down to the sea in ships. Therefore I have a very distinct predilection against following any rule adopted by the courts of Texas which maps out a deflection from the general course of the law merchant.

(2) It is a uniform maxim that money has no smell, and that, whether tainted or not, it ought to pass freely from hand to hand, diminished or affected only by the state of the credit of the country which emits it. It is only because of the fact that the matter of public credit is more important than private credit, and that public currency has in well-regulated communities, national and international, taken the place of private bills of credit; that negotiable paper was considered to have a smell, or to be open to attack, when in its negotiable state it found itself in the hands of an indorsee. The modern effort to produce uniform rules as to such instruments is, in my opinion, a movement away from those eddies, such as the Van Winkle Case, which were allowed to creep in where the universality of the negotiable principle was suf-

fered to be affected by local conditions, and the question of the local debtor and the foreign creditor was allowed to obtrude.

(3) I think it clear that, while there may be some departure from the general rule, the law is as stated in the exhaustive footnote of 6 A. L. R. 252, In re Grocer's Baking Co. (D. C.) 266 Fed. 900, and other cases along that line, that a bank is a purchaser for value when it takes a note from one of its customers, and credits the customer's deposit account with the purchase price, *when and as soon as*, under *all of the decisions, the deposit has been exhausted*, and under *many of them* when and as soon as the *original deposit has been drawn on;* so that I think it clear, under the facts as drawn from the pleadings, in the light of the demurrer, that the bank in this case was an innocent purchaser for value, and, unless some later occurring fact has deprived the bank of its right to sue, it has the right, both under the Negotiable Instruments Law and under the law merchant, as it existed prior thereto, to sue the makers and sureties, and recover against them the amount unaffected by the state of account between the payee and the defendants or the claims as they may exist between the maker and original payee.

I am further of the opinion that the purpose of the negotiable instrument theory is better subserved, and I think the negotiable statute intends that it should be subserved, by permitting notes and paper in form negotiable to circulate with the utmost freedom, without any imposition on the part of the holders in due course to take collateral steps to assist the maker in his controversies with the original payee; and that the law should be that a person once an innocent purchaser is always an innocent purchaser, unaffected by any obligation to protect the maker in any way. It is true that there has sprung up apparently two lines of decisions which announce a contrary doctrine.

The first is that relied upon and made to some extent the basis of the opinion in the Van Winkle Gin Company Case and in the McGehee Case, and set out and thus stated in Ruling Case Law, vol. 3 :

"That where a bank holds funds of the maker when the note matures it seems, according to the weight of authority, that it is bound to consider the interest of the indorsers or the sureties, and if it allows the makers to withdraw funds over protest, and the indorsers are the losers thereby, the bank cannot hold them liable on the note."

This doctrine, while stated in the early cases, and announced in the text-books, is in my opinion fast losing its position, and many of the state courts are abandoning and repudiating it. A notable case of this kind is Davenport v. Bank, 126 Ga. 136, 54 S. E. 977, 8 L. R. A. (N. S.) 944, 115 Am. St. Rep. 68, 7 Ann. Cas. 1000. In Ruling Case Law Supplement on Bills and Notes many authorities are cited, showing a trend away from this doctrine, nor does it ever appear to have been the doctrine of the Supreme Court of the United States. In Thomas v. Matthieson, 232 U. S. 221, 32 Sup. Ct. 527, 56 L. Ed. 634, the court states the rule to be that a bank, the payee or holder of a note, does not discharge a surety by failing to apply money of the maker which happens to be on deposit at or after the time the note matures.

I have made this discussion, not because it is controlling in this case, but in order to confirm the view, which I shall now announce, that in

the *courts of the United States* no case can be found which holds that an innocent purchaser *loses his rights* against the maker or any other party on the note, *by failing to take collateral or extraordinary steps* —that is, those other than the *face of the paper contemplates*—to collect his debt, and this statement apparently applies, not only to the case now under discussion, but to the cases of principal and surety, maker and indorser, relied upon in the McGehee Case as authority by analogy for the holding there made.

But counsel for the defendant says the case of Simmons v. Hodges, 250 Fed. 424, 162 C. C. A. 494, so holds, and if it has not been overturned by a later opinion of the Fifth Circuit, or by the Supreme Court of the United States, I am constrained to follow it, though upon my own judgment I would not do so, and they state my obligation correctly if the Simmons Case so holds. Turning, then, to the Simmons Case, I am of the opinion that, construed both upon its own statements and in the light of the Grocers' Baking Company Case (D. C.) 266 Fed. 900, while it did cite the Van Winkle Case, it merely cited that case as upon general considerations. It did not intend to adopt that rule, and it furnishes in no sense any authority for its application here. That case and the Dresser Case, 93 U. S. 92, 23 L. Ed. 815, merely affirm the uniform doctrine that a person is an innocent purchaser, if he has not paid in full before notice is brought home to him, only pro tanto, the amount he has paid.

In my original examination of this case I was misled by its reference to the Van Winkle Case, and verbally stated to counsel what I now see was an incorrect view of its effect. What it decided is stated in 250 Fed. on page 426, 162 C. C. A. on page 496:

"The only question presented by the record is whether, under these circumstances, the defendant in error can be said to *be a holder for value without notice of the note sued upon*, as to the amount of his own note given in payment of the note sued on *and which he paid after being notified of the vice* in the note sued upon."

The court answers this question in the negative, because the note had matured while it was in the original hands, and he could not be regarded as an innocent purchaser, because he had paid nothing. This is the holding of the Dresser Case, and that is what all these cases hold. They furnish no support whatever for the proposition that a person who has become an *innocent purchaser by reason of the full payment for a note in cash loses* the rights thereby acquired, *because he does not,* by some other proceeding, *protect some party* to the note.

Being myself clearly of the view that the rule in the Texas case is wrong, and finding no federal authority whatever to compel me to follow it, but, on the contrary, finding the federal authorities all the other way, I sustain the demurrer, and order will be entered accordingly.