## Falgiani Estate

*Michael R. Ford,* for the estate.
*Stanley M. Stein,* for claimants.

ROSS, *J.,* September 17, 1986 — At the audit of the first and final account of Josephine M. Albert, executrix of the will of Marie S. Falgiani, deceased, Anthony Falgiani and Gladys R. Falgiani presented a claim for rentals in the amount of $12,877.17 allegedly owed by decedent for premises leased to her prior to her death. The claim was not admitted. Anthony Falgiani died October 14, 1985. The execu-

trix of his will, Gladys R. Falgiani, appeared at the hearing for her late husband and for herself.

She testified that she and her husband owned an apartment house at 2036 Brownsville Road, Pittsburgh, Pa., containing three rental apartments. She further presented as evidence two books of account in which receipts and disbursements from the three apartments, from a bowling alley and a tavern had been recorded by her as of the time of the transactions. Since the Judicial Code of July 9, 1976, P.L. §5930, 42 Pa.C.S. §5930, bars the testimony of any witness having a pecuniary interest adverse to the estate as to matters occurring before decedent's death, counsel for the estate objected to the admission of the books of account as proved by claimant.

The Judicial Code of July 9, 1976, supra, §6108(b), 42 Pa.C.S. §6108(b), provides that a business record "shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission." The maker of the entries or the custodian at the time entries were made need not testify. *Indyk Estate,* 488 Pa. 567, 573, 413 A.2d 371, 373 (1980).

The cases go in two directions whether the claimant-preparer, whose interest is pecuniarily adverse to the estate, is competent to prove the books and records prepared by him. Those contrary are all lower court decisions and in the minority. *Stoneroad's Estate,* 9 *Fiduc. Rep.* 353, 356 (1959); *Allen v. Allen,* 36 Pa. Commw. 241, 242 (1909); *Smith's Estate,* 35 *Pitts.* 276, 278 (1887); *Ceol Estate,* 33 *Beaver* L.J. 178, 179 (1974). Those affirmative in-

clude some early Supreme Court cases and are in the majority. *Keener v. Zartman,* 144 Pa. 179, 189, 22 Atl. 889, 890 (1892); *Ash v. Patton,* 3 S. & R. 299, 300 (1887); *Carskadden v. Poorman,* 10 *Watts* 82, 84 (1840); *Nugent v. Duncan,* 11 D.&C.2d 179, 187 (1958); *Burton's Estate,* 15 Pa. Commw. 367, 369; (1927); *White's Estate,* 32 L.I. 430, 432; *McCrory v. Safier,* 1 *Fayatte* L.J. 17 (1930).

The court will accept the majority rule as the more logical and holds that the adverse party is competent upon oath to prove the books prepared by her but no more; the books of original entry so proved may of themselves be evidence of the trans-action. *Barclay Estate,* 50 Mont. L. Rep. 81, 83, 84 (1937). See also, *Brown Estate,* 63 D.&C.2d 524, 528 (1974). Therefore, the court will consider the books of record as evidence in and of themselves but properly sustained the objection of the estate as to the use of the books to refresh the memory of the claimant. She is incompetent to testify to her claim.

The issue then is whether the books of entry and the testimony of competent witnesses other than the widow-executrix constitute evidence of the claim which is clear, direct, precise and convincing. *Nicolazza Estate* 414 Pa. 186, 188, 199 A.2d 455, 457 (1964).

Darlene Falgiani, daughter of Anthony and Gladys and a beneficiary of this estate as well as that of her father, testified that in the late summer or early fall of 1978, decedent advised claimants to evict a tenant of the Brownsville Road apartment who was in arrears and indicated she would move in and pay rent. Decedent lived in the apartment from November 1978, to August-September 1985. The witness saw two rentals paid in cash but did not know the amount.

In January 1982, decedent told the witness she would not be paying rent for two or three months because she paid for installation of some new windows in the apartment and indicated she would resume paying the rent when the cost of perhaps four windows was recouped. As to not paying rent decedent declared, "that was okay, that my father would get it back whenever she died." The amount paid for the windows was not testified to. Decedent also did not pay certain utility bills, telling the witness her father would pay them. The court disallowed admission of the utility bills.

Wayne Falgiani, the prior witness's brother and a dual-estate beneficiary, testified that, about a year or a year and a half before her death, his grandmother said that when she died, the witness's father would receive all the rentals owed him. She did not state the amount.

Bruce Falgiani, another child of claimant, went to his grandmother's apartment with his father and heard her say to Anthony Falgiani, "You will get all the back rent when I am gone."

Raymond Felecetti, a nonrelative, said in July 1983, he heard decedent tell Anthony Falgiani to raise the other tenants' rents and he could get hers when she died. He knew she was paying no rent.

Angela Marie Zalavary, a great-niece of decedent, said when decedent lived in the apartment she told the witness she would take care of Anthony after she died.

The declarations against interest of decedent are admissible and are some proof that decedent had paid some rent and then ceased paying it early in 1979. Standing alone this evidence does not rise to the level of clear, direct, precise and convincing. However, when coupled with the record books it is corroborated as to dates of payment, the credit in

early 1979 for the new windows and the nonpayment of rent thereafter. The account records of equal rents paid by another tenant establish what rents decedent should have been paying. No evidence indicated a forgiveness of rent by Anthony or anything other than that his mother intended to pay him out of her estate for her delinquency.

Although the books contained some writings in different inks, this was consistent practice before and after decedent moved in and is not the kind of deviation that points to later insertions since darker or lighter inks were used at varying places in the book and could hardly been later inventions. In other respects the books were consistent as to manner of entry.

The book evidence summarized is clear:

(1) Decedent paid rental equivalent to another tenant (Starkey) in the amount of $175 a month from December 1978 until February 1979, when decedent was given credit of $442.10, which is tied by testimony to the new windows. Starkey paid $175 in February and March or $350 which would mean decedent's rent was paid through March 1979, with a credit of $92.10 plus her $175 March payment or a $267.10 credit as of March.

(2) In April 1979, Starkey paid $175. Decedent had a credit of $267.10 — $175 or $92.10. She paid no rent on account then or thereafter.

(3) From May 1979 through March 1980, Starkey paid $185 a month which may be considered the rent decedent should have paid — $185 x 11 months = $2,035 — $92.10 = $1,942.90 owed.

(4) Starkey paid $200 a month April 1980 through May 1981. 14 months x $200 = $2,800 for decedent plus $1,942.90 or $4,742.90 owed.

(5) Starkey moved out in June 1981, and paid a half months' rent and Lewandowski moved in in

July 1981 paying three-quarters months' rent and we add $400 for two months' rent onto decedent's $4,742.90 or $5,142.90 through July 1981.

(6) Lewandowski paid $210 a month, August 1981 to July 1982. 11 months @ $210 adds $2,310 to $5,142.90 = $7,452.90 owed by decedent July 1982.

(7) From July 1982 through October 1983, Lewandowski rentals were $230. $230 x 16 months = $3,680 added to $7,452.90 = $11,132.90.

(8) Lewandowski paid no rent in November 1983, but another tenant, Galayda, paid the same rent as he had since July 1982, so we add $230 for November 1983, onto the previous balance of $11,132.90 bringing decedent's total rental account to $11,362.90.

There are no rental book entries after November 1983.

The book entries plus decedent's declarations against interest that she owed rent payable to decedent after her death are clear, precise, direct and convincing evidence of the debt owed the estate by decedent.

The court will allow $11,362.90 for past due rentals to claimants.

A decree of distribution will be drawn in accordance with this opinion after disposition of a will contest matter now before the court.

The exceptions are to await the decree of distribution.