Supreme Sitting of the Order of the Iron Hall *v.* Baker *et al.*

No. 16,833.

## SUPREME SITTING OF THE ORDER OF THE IRON HALL *v.* BAKER ET AL.

RECEIVER.—*Complaint.*—*Sufficiency, How Tested on Appeal.*—On an appeal from an order of court appointing a receiver, where the sufficiency of the complaint is called in question, the appellate tribunal will test the sufficiency of the complaint only in so far as it relates to the appointment of the receiver and the cause therefor. The complaint must contain some facts authorizing the appointment of a receiver at the time such appointment is made, or it will be insufficient. If the complaint has an object other than that of the appointment of a receiver, it remains in the trial court, in so far as the other branch of the case is concerned, and the sufficiency of the case in that respect can not be questioned on such an appeal.

SAME.—*Corporation.*—*Appointment of Receiver on Application of Shareholder.*—*Equity.*—A shareholder of a corporation, as well as a creditor thereof, has a right to invoke the authority of a court of equity in the appointment of a receiver of the corporation, where the conditions essential to such proceeding exist; and this principle is also true of a shareholder who has rights as a policyholder or creditor.

SAME.—*Ground for Appointment.*—*Power of Court Over Management and Property of Corporation.*—To authorize the appointment of a receiver there must be some valid ground for so doing, though the object may be, in so far as the power of the court is concerned, to wrest the management and property of the corporation from the hands of designing, incompetent, and irresponsible officers in charge of its affairs, who are squandering or converting the funds, and require an accounting by such officers; and such management and property of the corporation may be so held until the management is changed or proper security is given for the funds of the corporation. The court has the power at any time, when it will subserve the interests of the parties, to discharge the receiver and restore the management and property of the corporation to its duly constituted management.

SAME.—*Corporation.*—*Shareholder.*—*Redress by, How Obtained.*—*Equity.* —A stockholder or shareholder is bound to seek redress by application to the directors or the corporation itself, before applying to a court of equity for the appointment of a receiver, where that is feasible and will afford to him an adequate remedy, and he can only apply to a court of equity in the first instance where an emergency exists for so doing, and it is made to appear that an application to the directors or the corporation would be impracticable, or that re-

lief by injunction will not afford a proper remedy by staying the illegal acts of the corporate officers until relief can be had through an application to the directors or the managing body.

EQUITY.—*Insolvent Corporation.*—*Power to Dissolve.*—A court of equity has no power, independently of statute, to dissolve an insolvent corporation. '

From the Marion Superior Court.

*N. Morris, L. Newberger, J. B. Curtis, J. S. Duncan, C. W. Smith* and *D. W. Howe,* for appellant.

*A. C. Harris, R. O. Hawkins, H. C. Smith, A. Baker* and *E. Daniels,* for appellees.

OLDS, J.—The appellees, Albert R. Baker, Homer A. Sampsell and Dan W. Knefler, brought this suit in the Marion Superior Court against the appellant, the Supreme Sitting of the Order of the Iron Hall.

A receiver was appointed, and from the interlocutory judgment appointing a receiver, this appeal is prosecuted.

. The complaint alleges, that the appellant was incorporated in December, 1881, under the laws of this State authorizing the organization of voluntary associations; that one object of the corporation is to establish a benefit fund from which members of the said order who have complied with all its rules and regulations, or the heirs of such members, may receive a benefit in a sum not exceeding one thousand dollars, to be paid in such sums and at such times as may be provided by the laws governing such payment, or in the certificate of membership; that another object of the corporation is to establish a life fund by which, upon the death of a member who has been admitted to membership in said fund, a sum not exceeding three thousand dollars shall be paid to such beneficiary as the member may direct as provided by, and subject to, the laws of the order; that under the provisions of said articles of association, its business is conducted, and its property controlled, under such laws and

regulations as have been or may be hereafter legally
adopted by the following officers of the association, viz:
A supreme justice, a supreme vice-justice, a supreme ac-
countant, a supreme cashier, a supreme medical director,
a supreme adjuster, a supreme instructor, a supreme
prelate, a supreme herald, a supreme watchman, a su-
preme vedette, and five supreme trustees, who severally
acquire and hold office in the manner and for the terms
provided for in the constitution, and until their success-
ors are elected and installed; that the articles further
provide that said association shall have power to levy
such assessments or taxes upon local branches at any
regular session upon the subordinate membership as may
seem to be necessary in addition to the charter fees and
other revenues to meet the estimated expenses of the en-
suing year or other specified time, and the proper officers
have power to make the proper and specified assessment
to pay any liability on account of the sickness or disabil-
ity or maturity of membership; that, under the provis-
ions of its articles of association, it adopted a constitution
known as the constitution of supreme sitting, and also
certain laws known as laws of the supreme sitting, un-
der which constitution, laws, and articles of association
it transacted its business, a copy of all of which is filed
with the complaint; that under the provisions of its
articles, constitution, and laws it has established a large
number of local sisterhood branches composed of mem-
bers, such branches being subject to the authority and
control of the defendant corporation and its officers,
articles, constitution, and laws, and under the articles,
constitution, and laws there is established what is known
as a benefit fund, in which members thereof participate,
upon passing a medical examination, and upon payment
by each of a certain assessment made therefor, such
benefit being either in the sum of $1,000, $800, $600,

$400 or $200, as the member may elect, it being provided that upon payment of the assessments the beneficiary, in case of sickness, shall receive a certain stipulated sum weekly, and, in case of injury or disability by accident, certain stipulated sums are to be paid, and at the expiration of seven years from the date of becoming a member he shall receive the full amount specified in his certificate of membership, less the amount already received by him for sick or disability benefits theretofore paid on his certificate. Eighty per cent. of each assessment levied by defendant goes to and makes up this said benefit fund. Twenty per cent. of the amount received is required to be set apart and retained as a reserve fund, which said fund is the property of the corporation and may be left under the control of the local branch paying the assessment upon payment of six per cent. interest thereon by such local branch, or the sum may be paid to the corporation, to be by it invested as provided by its articles, constitution, and laws. After a period of six years and six months after the organization of the corporation, one-seventh of the amount of the reserve fund is subject to withdrawal therefrom, to be applied upon the payment of maturing benefits.

A general fund is also provided for, consisting of an annual per capita tax of $1 on each member, revenues derived from supplies, and charter fees received from local branches, and from the general fund are paid the expenses of maintaining and carrying on the business of the corporation; that there have been established throughout the different States of the union 1,200 local branches, the membership of which exceeds 60,000, who are participating members in the benefit fund, and have been, and are, paying assessments made by the appellant in pursuance of its constitution and laws; that the supreme power of the corporation is vested in what is known as

the supreme sitting, a body composed of its officers and past officers, and representatives elected by the local branches, and it holds its meetings quadrennially; that in the interim between the meetings of the supreme sitting, the power and authority of the corporation, and the entire supervision of its business and affairs is vested in the supreme justice and the executive committee, which said committee is composed of the junior past supreme justice, the supreme justice, the supreme vice-justice, the supreme accountant, cashier, medical director, adjuster, instructor, and one representative from the board of trustees, a majority of whom constitute a quorum. There is not, and for several years last past has not been, any junior past supreme justice; that it is the duty of the executive committee to hold regular sessions on the first Tuesday of February and August of each year; that Freeman D. Somerby is, and has been for five years last past, the supreme justice; that the appellees, and each of them, are members of the appellant corporation, in the benefit fund, in good standing in the order, and have been members of said order for more than four years last past, and have complied with all the rules, laws, and regulations of the corporation, and have paid all assessments, taxes and amounts due from them on account of such membership, and will, at the expiration of seven years from the time of their becoming members of said order, be entitled to receive out of said benefit fund the sum of one thousand dollars each; that some of said appellees are also members of the life division, and have fully paid all assessments and dues thereunder, and complied with all the rules and regulations of the corporation in relation thereto; that their beneficiaries at their death will be entitled to the amounts due on account of their said membership in such life division.

It is alleged that appellees are informed and believe,

and, therefore, charge the fact to be that the appellant corporation is now insolvent.

It is further alleged that the corporation is indebted for maturing benefits, for the remainder of the year 1892, over one million dollars, and for sick and disability benefits over three hundred and twenty-five thousand dollars.

It further charges that millions of dollars will become due during each of the succeeding three years.

It is next alleged, that the reserve fund in the hands of the branches amounts to only about twelve hundred thousand dollars, only one-seventh of which is available each year for the payment of liabilities; that the real estate and other assets of the corporation amount to about one million dollars; that such assets are composed largely of cash, more than one-half of which is deposited in one bank, located outside of the State of Indiana, of which Somerby, chief justice of the corporation, is vice-president, and J. Henry Hays, one of the supreme trustees, is cashier, the bank being one of limited capital.

It is further averred by an amendment to the complaint, that neither the corporation, nor any officer thereof, nor any person in its behalf, has given any sufficient bond or bonds, nor is there any existing bond or bonds, or good or valid security, held by the corporation for its use and benefit, for the security, safe keeping and protection of the moneys aforesaid now held by or under the control of the corporation, as collected from its membership throughout the country, aggregating one million and fifty thousand dollars, nor is said money invested in bonds or other securities, or loans, but the same is kept and held under and subject to the control of some of the officers of the defendant; that some of the officers have used, and are now using, the said moneys for their own

personal use and purposes.   Amongst other acts of maladministration, the said Somerby and Hays, and other persons acting in conjunction with them, but whose names are unknown to appellees, in some way unknown and concealed from the appellees and the general membership of the corporation, got control of a bank in Philadelphia, Pennsylvania, which bank was created by special charter of said State, naming the corporation the People's Savings Fund, Insurance, Trust, and Safe Deposit Company, but was named and known as the Mutual Banking, Security, Trust, and Safe Deposit Company of Philadelphia, Pennsylvania.

The said charter gives the said corporation, among others, the power to do a building business, a safe deposit business, a loan and trust business, to buy and sell notes, bonds, obligations of every kind and in any manner, and in any market, and also power to make insurance for the fidelity of persons holding places of responsibility and of trust.   The said bank is now under the active control and management of said Somerby and Hays and their said associates; said control was acquired on or about January 1st, 1890, by the persons last named. Upon getting the control of said bank, they filled the offices as they desired, and took the active control and management of its affairs.

The bank at that time had little, if any, capital paid up, and but little, if any, money on deposit with which to transact business, and the same was acquired by the persons aforesaid to be used for the uses, purposes and benefits in the manner following:

They and the persons coöperating with them in that behalf, as aforesaid, caused a large part of the trust fund of the appellant corporation then in the possession and control of the appellant, at Indianapolis, to be taken from the appellant and placed in the custody and keep-

ing of the said bank, to be used and which was, has been, and is being, used by them and said bank in carrying on the business of said bank; that the amount of money so taken when they acquired said bank was four hundred and fifty thousand dollars, no security whatever being given by the bank or any officer or person for the same, and no interest or reward paid for the use thereof, but the same is kept and used by the bank for their own use and profit; that, in April, 1892, the State of Pennsylvania, under its laws and by its officers thereby authorized, took charge of said bank as being insolvent, and brought a proceeding or suit against the bank or its officers to close and wind up said bank as an insolvent; that the court and officers having the matter in charge were proceeding to wind up the bank under the laws of said State, and would have done so, but that said Somerby, Hays, and their associates induced said officers and court to make an order to the effect that upon the owners of said bank restoring its impaired capital, by paying at once into the treasury of said bank one hundred and twenty thousand dollars in cash, then and in that court the said proceedings would be discontinued; thereupon in pursuance of their illegal and fraudulent purposes, said Somerby and Hays, with their said associates, took and caused to be taken out of the treasury and funds of the appellant, at Indianapolis, and under the control of the treasurer of appellant, one hundred and seventy thousand dollars, and put the same in said bank, representing that it was in compliance with the order of the court, and thereby caused the court and officers aforesaid to turn said bank back to their possession and control; that such misappropriation of the funds of the appellant was kept concealed from appellees and the membership of the appellant, and has been and still is concealed from said order; that appellant holds no promise or security for said

money, and Somerby and Hays and their associates, controlling said bank, boldly deny that said bank is liable to said appellant therefor; that said Somerby and Hays have from time to time caused to be deposited in said bank, for their use and benefit, other sums of money than hereinbefore mentioned, so that said bank has received of said moneys of the appellant at least the sum of seven hundred and fifty thousand dollars, for which appellant has no security other than the solvency of said bank, which bank is wholly unable to pay said money and is insolvent; that one of the purposes for which said Somerby and Hays and their associates acquired control of said bank was in order to do a business of writing guarantee bonds of insurance given and required by and from the treasurers and officers of the various branches of the Iron Hall throughout the country, as aforesaid, and that said bank has been engaged in such business; that appellant had on deposit with officers of the various branches of said order aforesaid other large sums of money, aggregating one million five hundred thousand dollars, for which appellant holds no security other than such guarantee bonds as may have been given by the said bank, which bonds are of little or no value, because of the financial weakness and insolvency of said bank, and the said Somerby and Hays and their said associates, and the said bank failed, neglected and refused to pay said sums of money, so taken from the treasury of the appellant, back to the appellant, or to make the same good in any proper manner, but continue wrongfully and fraudulently to withhold the funds of the appellant from its proper officers and agents, and are unable financially to make the same good, so that by means of the wrongful mismanagement and maladministration of the affairs of the appellant by the said Somerby, Hays, and their associates, the sums of money herein

last above mentioned have been taken from and lost to the appellant, and the same can not be had, used or applied to the purposes for which it was gathered and acquired.

It is further alleged in the complaint that the affairs of the appellant have been carried on in a reckless and extravagant manner in the payment of extravagant salaries, and the expenditure of large sums of money in traveling expenses and pretended claims, amounting to fifty thousand dollars or over in one year, which said last named sum was appropriated and used by Somerby in the payment of pretended claims for expenses, when, in truth and in fact, as appellees are informed and believe, said sums were not used for legitimate expenses of appellant; that by reason of the extravagance and misappropriation of the general fund of the appellant in the payment of expenses and pretended expenses, all of the general fund has at different times been exausted, and large sums of money have been drawn and taken from the reserve fund and placed in the general fund and consumed in the payment of the expenses, when the same should have been held in the reserve fund, and held sacred for the payment of maturing benefits, and for the payment of sick and disability benefits maturing; that thereby the funds so unlawfully transferred to said general fund, and used therein, were lost to the reserve fund; that said Somerby, for the purpose of concealing the true financial condition of the order, has made and caused to be made changes and alterations in the books of account of the appellant, so that the same do not show the exact and correct state of the accounts and affairs of the corporation; that Somerby has appropriated to his own use, and failed to account to appellant for, large sums of money belonging to said appellant on account of charter fees and other moneys collected and received by him

from officers of local branches, and in settlement with the local branches which have been discontinued or consolidated; that no regular meeting of the executive committee has been held since the year 1890, and no special meeting has been called or held since January, 1891, and no report of the executive committee has been made to the members of the local branches since 1890; that no examination of the books or auditing of the accounts has been had since February, 1891; that in February, 1891, a special session of the supreme sitting was called at Indianapolis; that by the articles, constitution, and laws of the appellant only such business may be transacted at a special session of the supreme sitting as shall be included and set forth in the call for said special session; that said call for said special session provided, among other things, that the session should receive and pass upon the report of the financial committee; that said Somerby procured the financial committee of said supreme sitting to recommend that his salary be raised from six to ten thousand dollars per annum, and this was the only business of importance transacted or intended by said Somerby to be transacted by said sitting; that by the laws of the order a printed report of the doings of each session of the supreme sitting must be made to the branches of the order and its members; that said Somerby has prevented the printing of such report, and no report of the doings of said session has ever been made; that if said Somerby and the other officers of the appellant are permitted to continue in possession of the assets of the corporation, and to carry on its business, the said assets will, by reason of the said reckless and extravagant management of the said business, be wholly lost to the members of the order, who are participants in the beneficiary and life funds.  Prayer is made for the appointment of a receiver to take possession of the assets and books of ac-

count of the corporation, to collect all amounts due it, and disburse the same in such manner as the court may order for the dissolution of the corporation and closing up of its business, and for such other and proper relief as the court may deem just and equitable.

Error is properly assigned that the complaint does not state facts sufficient to constitute a cause of action.

It is contended by counsel for appellees that the sufficiency of the complaint can not be questioned, for the reason of the fact that an appeal from the order appointing a receiver only brings before the appellate tribunal the proceedings which immediately led to the appointment of the receiver, and that the pleadings, and all other matters pertaining to the action, remain open and undetermined, and all within the control of the court below, the theory being that the complaint may be supplemented and enlarged by the presentation of affidavits, or the introduction of oral testimony in support of the application, and all will be taken into consideration in determining the necessity for the appointment of a receiver; that the complaint may be looked to where the evidence is in the record in determining whether or not a receiver ought to have been appointed; but that in this case the evidence is not in the record, the complaint is not verified, and hence the question as to its sufficiency can not be considered on this appeal, it being subject to amendment at any time before final judgment.

We think there can be but little doubt as to what the true rule in this regard is. If the appointment of a receiver is but an auxiliary to a pending action, to keep intact a fund sought to be reached and applied in satisfaction of a final judgment to be rendered, or to aid in carrying out the final object of the main action, the sufficiency of the complaint will not be tested on an appeal from an interlocutory order appointing a receiver, in so

far as it relates to its sufficiency to entitle the party to the relief asked in the main action.   In that respect, it is under the control of the trial court, and may be amended at any time before final judgment.   But the court will look to the complaint, and test its sufficiency in so far as it relates to the appointment of a receiver, whether the appointment be as an auxiliary to an action, or whether the suit is being prosecuted for the sole purpose of appointing a receiver.   There must be some application filed on behalf of the party seeking the appointment of a receiver and invoking the powers of the court to be exercised in that behalf.   He must map out some form of pleading stating a cause for the appointment of a receiver, that the opposite parties may know on what grounds the right to a receiver is claimed, and that they may know what they have to meet and defend against to prevent the appointment, and the pleadings in this behalf will bound and limit the inquiry.   *Steele* v. *Aspy, Admr.*, 128 Ind. 367.

It will not do, we think, to dispense with all rules of practice in the appointment of receivers, any more than in any other class of legal proceedings.   Tested, as it may be, and is in this case, in this court for the first time, the complaint will not be construed by any harsh and technical rule, but it must state at least generally a cause for the appointment of a receiver, else it can not be sustained.

The decision in *Naylor* v. *Sidener*, 106 Ind. 179, cited by counsel for appellee, is in harmony with the theory we have announced.   In that case the appointment of a receiver was auxiliary to the main action, and to enable the court to protect and enforce the rights of the parties, as might finally be decreed, an appeal was taken from the order appointing a receiver, and the court says:

"'Upon an appeal like the one before us, we will necessarily look into the record to ascertain whether an action was pending when the receiver was appointed, and to be informed as to the general nature and scope of the proceedings which resulted in his appointment. But such an examination of the record ought not, and does not, involve any formal ruling upon the sufficiency of the complaint as a demand for other or more general relief. The doctrine of our cases is that the averments of the complaint may be supplemented, and in effect enlarged, by the presentation of affidavits," etc.

It is further said that, after an appeal from the appointment of a receiver, the cause remains in the *nisi prius* court for further proceedings, when, "with leave of court, amendments to, or changes in, the pleadings, may thereafter be made." The complaint, in other respects than that of the appointment of a receiver, may be amended after an appeal from the order for the appointment of a receiver; and true it is, that the complaint may be enlarged by affidavits, but it must contain some general facts authorizing, and as a basis for, the appointment of a receiver at the time a receiver is appointed, when the appointment is made on the application of a party.

*Main* v. *Ginthert*, 92 Ind. 180, cited by counsel for appellee, was an action for the foreclosure of a mortgage, in which case a receiver was appointed upon a showing made by the cross-complaint, and the court held that an appeal from an interlocutory order appointing a receiver, left all the proceedings except such as immediately led to the appointment of the receiver, still pending, and under the control of the circuit court, and that on such appeal no question was presented as to the sufficiency of the complaint filed by the plaintiff. This holding is correct,

for the receiver was appointed on the showing made in the cross-complaint.

The effect of the decision in *Hursh* v. *Hursh*, 99 Ind. 500, is that on such appeal no question is presented for consideration except such as immediately led to the appointment of a receiver. In this case the receiver was appointed on the application of the appellees, the plaintiffs below, invoking the power of the court for that purpose by averments in their complaint. It was by virtue of such averments that the court took jurisdiction, heard evidence, and appointed a receiver, and the sufficiency of the complaint can only be tested as to its sufficiency for that purpose. The assignment of error as to the sufficiency of the complaint questions its sufficiency for the purpose of the appointment of a receiver. If the suit has another object than that of the appointment of a receiver, in so far as the other branch of the case is concerned, it remains in the court below, and the sufficiency of the complaint in that respect can not be questioned on this appeal. But the complaint has for its object the appointment of a receiver, and the court acted upon it, and appointed a receiver, and the case is in this court on that branch of the case. If the complaint does not state facts sufficient to call into action the power of the court in this respect, then the proceedings appointing a receiver were without a foundation, and must fall.

In this connection, and before entering upon the consideration of the more important and vital questions in the case, we will consider some minor questions presented by counsel for appellees.

It is suggested that it is shown by the complaint that the appellant was organized as a voluntary association under the statute authorizing voluntary associations, and that it is, in fact, an insurance company, its sole object and purpose being that of insurance engaged in accident,

endowment, and life insurance, issuing certificates of insurance for value; that it is not such a corporation as is contemplated and authorized by the statute under which it is organized, hence it is not a legal corporation, and that user does not make it a corporation *de facto*. While counsel do not point out how, if this be true, the appellees can profit by it on this appeal, we apprehend it is suggested on the theory that having no legal existence as a corporation, an individual share-holder may invoke the power of the State by *quo warranto* proceedings, and have the pretended corporation dissolved, and having the right to dissolve the corporation a right would also exist to have a receiver appointed to close up the business and make a distribution of the funds.

While there is an early case in this State, *Albert, Cashier*, v. *State, ex rel.*, 65 Ind. 413, to the effect that a stockholder may invoke such power of the State, yet it is unnecessary to consider the question, for no such remedy is sought in this case. The appellees bring this suit treating the appellant as a legal corporation. It is not a *quo warranto* proceeding for the dissolution of an illegal corporation, even if the appellees might have maintained such proceedings. They have not sought to do so, and whether they could or could not maintain it, if they had, can not be considered or have any effect on the decision of this case. The appellees may, no doubt, amend their complaint in the court below, but a *quo warranto* proceeding would be the institution of a new suit on behalf of the State by a relator.

It would seem, from the general scope and tenor of the prayer to the complaint in this case, that the relief sought by the appellees was a dissolution of the corporation on the grounds of its insolvency and general mismanagement of its affairs by its officers, and the appointment of a receiver to wind up its affairs. This, it would

seem, is what the pleader had in mind when he drafted the prayer to the complaint.

That a court of equity has no power, independently of statute, to dissolve an insolvent corporation is well settled. The authorities seem to be universal in holding this doctrine. We have been cited to no authorities holding a contrary doctrine, and we have been unable to find any in the search we have made. There is no statute of this State authorizing a court of equity to dissolve a corporation on such a proceeding as the one at bar, brought on behalf of individual stockholders or shareholders, as the appellees are in this case. Hence the action can not be sustained or regarded as one having for its object the dissolution of the corporation on the grounds of insolvency or being in imminent danger of insolvency.

It is contended on the part of the appellant that a receiver can not be appointed, even under the statute of this State, when that is the only relief sought in the action, and we are cited to some decisions of other States in support of this contention, but the decisions cited are based upon statutes differing from the statutes of this State, and provide for the appointment of a receiver in cases pending. Some authorities state this to be the rule independently of statutory enactments.

Our statute, in this behalf, is quite broad in its terms. Section 1222, R. S. 1881, provides that "A receiver may be appointed by the court, or the judge thereof in vacation, in the following cases." The fifth clause of the section reads as follows:

"*Fifth.* When a corporation has been dissolved, or is insolvent, or is in imminent danger of insolvency, or has forfeited its corporate rights."

As a rule, if not universally, the appointment of a receiver is ancillary to the main cause pending. As in a

case for the foreclosure of a mortgage, an action by a creditor against an insolvent corporation in which he asks judgment for his claim, the dissolution of a partnership or a corporation, and many like cases. But so much of the statute as we have quoted may, we think, be fairly construed to read: That a receiver may be appointed by the court, or the judge thereof in vacation, when a corporation has been dissolved or is insolvent, or is in imminent danger of insolvency, or has forfeited its corporate rights; and it has been so construed by this court.

In *First Nat'l Bank of Mauch Chunk* v. *United States Encaustic Tile Co.*, 105 Ind. 227, it is said: "Section 1222, R. S. 1881, in force since September 19th, 1881, specifies a number of cases wherein a receiver may be appointed by the court, or the judge thereof in vacation. In some of these cases it is manifest that the appointment of a receiver is, and was intended to be merely an ancillary proceeding in a pending suit for the purpose of placing property, which is the subject of the litigation, in *custodia legis*, until the suit is determined and the rights of the parties are ascertained. In some of the cases specified, however, provision is made for the appointment of a receiver by the court, or the judge thereof in vacation, where such an appointment is the only purpose of the suit, and the only relief demanded therein." The court continues, by quoting the fifth clause of the section, and stating that it was under that clause that the suit was commenced, and that it was alleged that the corporation was in imminent danger of insolvency, that it was in fact in such danger, that these were issuable facts, and that it was an adversary proceeding.

We do not find it necessary to give the statute so broad a construction as given in this case—that a receiver may be appointed under the statute, when the sole object

sought is to take the property from the hands of the of-
ficers.

In the case at bar, the object of the proceedings, as we
hold, is to secure the accounting of the officers, the ap-
plication of the funds to the proper objects of the cor-
poration, and the office of a receiver is the means or force
sought to aid in accomplishing of this object.

Statutory enactments, such as the one under consider-
ation, are enacted for the purpose and with a view of en-
larging the jurisdiction and powers of courts of equity in
matters of the appointment of receivers.

In High on Receivers (2d ed.), section 313, it is said:
"It has already been shown, that in most of the States of
this country, the general jurisdiction of courts of equity
over corporations has been enlarged, to the extent of au-
thorizing the appointment of receivers in behalf of cred-
itors and shareholders. The general purpose of these
legislative enactments has been to provide adequate pro-
tection, in case of insolvency of the corporate body or
of misconduct on the part of its officers, to those who
might otherwise be without remedy in the usual course
of proceedings at law."

In Spelling on Private corporations, section 1001, it is
said: "The legislation in the various States providing for
the appointment of receivers of insolvent corporations
is based upon the just and reasonable policy of protect-
ing those who would otherwise be without adequate rem-
edy in the usual course of legal proceedings in case of
the insolvency of the corporation. And the same rea-
sons exist for the appointment, whether the insolvency
has been caused by the misconduct and infidelity of the
company's officers or from other causes. The statutory
power thus conferred, with a few exceptions, does not ex-
tend to authorize the court to dissolve the corporation."
It is further said: "The court seeks not to destroy rights

but to preserve them, and for the accomplishment of this end the annihilation of the franchise is unnecessary. That duty concerns the sovereignty, and where its performance becomes necessary a court of law is the appropriate tribunal. And the court may at any time, in the exercise of its discretion and in subserving the interests of the parties, discharge the receiver and restore the property and affairs of the corporation to its duly constituted management.'' See 2 Waterman on Corporations, pp. 678 and 679.

A court of equity should not ruthlessly wrest from the legally constituted officers of a corporation the management of its affairs and the property of the corporation, and turn it over to the hands of a receiver. Such power should not be exercised by a court of equity except with due care, and in a case where it is clearly made to appear that it is for the best interest of the parties interested, and it will not be presumed that a court of equity will exercise such power, except when the exigencies of the case clearly warrant it; but, we think, under our statute, the court has such power when it is clearly made to appear that the exigencies of the case demand that it be done.

The authorities from which we have quoted enunciate the doctrine that the right to call into action this power of a court of equity exists as well in a shareholder in a corporation as in a creditor thereof, and we see no reason why it should not be so. A shareholder, especially as in this case, who has rights as a policyholder or a creditor, though his debt be not due, has an interest equal to any other of its members in the affairs of the corporation being properly conducted, and the preservation of the funds of the corporation, and the proper application of the same to the legitimate objects and purposes of the corporation, and to the payment of

its debts and obligations, and in the perpetuity and prosperity of the corporation, and that it may continue in force until the obligations due the shareholders shall mature.

We do not affirm that a receiver may be appointed by a court of equtiy, under our statute, on the application of any shareholder, when the sole purpose is that of the appointment of a receiver, based on the disaffection of such stockholder without any adequate cause for so doing, and it is not necessary to do so in this case. There should be some object in the apppointment of a receiver, based upon valid grounds for so doing, though that object may only be in so far as the power of the court is concerned, to wrest the management and property of the corporation from the hands of designing, wicked, incompetent, and irresponsible officers in charge of its affairs, who are squandering or converting the funds, and require an accounting by such officers, and place the property and management of the affairs of the corporation in the hands of a receiver, and hold it in abeyance until the management is changed or proper security given by the officials for the funds of the corporation. The court having the power at any time in its discretion, when it will subserve the interest of the parties, to discharge the receiver and restore the property and affairs of the corporation to its duly constituted management. And whenever such a state of affairs exists, as that the corporation has proper officers qualified, and the funds of the corporation and its proper application secured, it will be the duty of the court to restore the property and affairs of the corporation to its duly constituted management; for it is a remedy given only as an expediency to parties who are otherwise without a remedy. If such parties have an adequate remedy other than the appointment of a receiver, then the right to a

receiver would not exist, though the remedy be through the means prescribed for the management of the corpoation by its constitution and laws.

If officers prove false and set about to bankrupt a corporation, the end sought by them may be reached before any change in the management can be accomplished, and unless a court of equity interferes to wrest from their management its affairs and property the shareholder may be without remedy. It is upon this theory which we have announced, that we think this proceeding for the appointment of a receiver can be maintained, though, as we have suggested, the prayer of the petition would indicate that the pleader might have had in mind the dissolution of the partnership, yet the petition states the facts, and upon the facts stated its sufficiency must be judged, and its sufficiency or insufficiency will not be determined by the prayer.

While the facts alleged may not be technically sufficient to warrant the appointment of a receiver, had the complaint been verified, and had the appointment rested upon it alone, but the complaint is not verified, and we think it is sufficient to give the court jurisdiction, and to call into action the power of the court in that behalf, and states a cause and shows an emergency for the appointment of a receiver.

The general averments of the complaint may be supported by affidavits or oral testimony. The averments of the complaint may be general, and thus supported by evidence giving in detail the facts in harmony with the averments of the complaint, all of which will be taken into consideration by the court in determining whether or not such an exigency exists as warrants the appointment of a reciver. The averments of the complaint in this case are broad enough to authorize the introduction of evidence showing an emergency for the ap-

pointment of a receiver. The evidence in this case is not in the record, and it will be presumed that the action of the court was sustained by it. As we have before said, the complaint in such a proceeding will not be judged by any harsh or technical rule.

In some of the decisions, *Steele* v. *Aspy, Admr.*, 128 Ind. 367, it is held that pleadings and demurrers, which are the ordinary way of testing the technical sufficiency of pleadings, are not relevant in such an application, but the application must be sufficient to justify the appointment. It must state in general some cause at least for the appointment. In some instances, when the appointment of a receiver is ancillary to a pending action, the application will be heard and the appointment made, on a motion to that effect.

The complaint in this case alleges as a fact that the corporation is insolvent. In addition thereto it shows that the total assets of the corporation amount to one million dollars, and that officers of the corporation have taken from the corporation some seven hundred and fifty thousand dollars of such assets, and converted them to their own use, placing them in a bank in the State of Pennsylvania, under their control, without security and without any responsibility save the money so deposited; that the money due the corporation from branches in the various states is only secured by the indemnity of such irresponsible bank; that the officer whose duty it is to call a meeting of the board of managers, fails to do so, and that it is he who is so misappropriating the funds of the corporation, and refuses to allow the proceedings of their meetings to be published, as required; that a very large sum—one million three hundred and twenty-five thousand dollars—will fall due on certificates within about six months from the date of the filing of the petition, setting out in detail, as we have shown in the

statement of the case, a condition of affairs of the corporation hazarding its usefulness, endangering its perpetuity, and that it is in imminent danger of insolvency, charging, in terms, two of the causes for the appointment of a receiver, as provided by the fifth subdivision of section 1222, *supra*, of the statute.

We are not unmindful of the rule that the legal relations, into which members of a corporation enter, require them to seek redress for supposed wrongs done them as shareholders from its officers, and from the corporation itself, before applying to a court of equity for redress; but this rule is subject to an exception, when it appears that such application would be unavailing to protect their rights. This exception may exist, says the court in *Dunply* v. *Traveler Newspaper Assn.*, 146 Mass. 495, "when the directors themselves are the wrongdoers, or are in fraudulent combination with them, or when the corporation is controlled by them, or when it is necessary that action should be taken too speedily to leave time for a corporate meeting of stockholders." This decision, we think, well and properly defines the rule.

A stockholder or shareholder is bound to seek redress by application to the directors, or the corporation itself, before applying to a court of equity, where that is feasible, and will afford to him an adequate remedy, and he can only apply to such court in the first instance, where an emergency exists for so doing, and it is made to appear that an application to the directors or the corporation would be impracticable.

We think that we may very properly enlarge on this doctrine, by saying that where relief by injunction will afford a proper remedy, by staying the illegal acts of the corporate officers until relief can be had for supposed wrongs, through an application to the directors or managing body, or to the corporation through the means pro-

vided by the constitution and laws of the corporation, the court will not wrest the management of the corporate affairs from its legally constituted officers, and turn its property and the management of its affairs over to a receiver.

But in this the officers in charge of the affairs of the corporation, and who are charged with gross acts of maladministration of its affairs, are nonresidents of the State, they are charged with having already taken seven hundred and fifty thousand dollars of its funds from its treasury and depositing them in an insolvent bank outside the State, controlled by them, and using the same for their own benefit, giving no security for its payment or use; that the only security for the money held by the officers of the local branches existing in the several States is the guaranty of this insolvent bank; that money is constantly being paid to the officers of these local branches, and coming into the treasury of the corporation. To preserve the usefulness of, and perpetuate the beneficence of, the corporation, and to preserve the interests of the shareholders, the business must be continued, the dues collected, and the beneficiaries paid, and it is manifest that any relief which could be obtained by means of an injunction would not be an adequate remedy, or meet the emergency existing. While a receiver, if one be appointed, would supersede the officers, shareholders could pay the money, it would be secure, and the business conducted until a remedy could be had through the organization itself, by the displacement of incompetent or dishonest officials, and filling their places by competent and honest ones, and requiring the officers of local branches to give other and responsible surety.

The showing in the complaint presents a case where the officers charged with maladministration are in a position to take from the corporation daily funds of the

corporation, and during the delay necessary for a meeting of the managing board or shareholders, and before displacement of the alleged dishonest officials, through the process provided by the laws of the corporation could be had, many thousands of dollars more might come into their hands, or be taken from the treasury by them and squandered, or converted to their own use.

In the Am. and Eng. Encyc. Law, Vol. 20, p. 272, it is said: "Where the directors or officers of a corporation are mismanaging the business and jeopardizing the rights of the stockholders and creditors, the court may appoint a receiver upon the application of a stockholder." See authorities cited in support of the text.

In *Wayne Pike Co.* v. *Hammons*, 129 Ind. 368, the action was by stockholders of a gravel road company, against the officers of the corporation, to compel an accounting and to obtain the appointment of a receiver. The court held that the action would lie and that no application for relief to the directors or corporation was necessary before bringing the action. It was held in that case that the court had the power to appoint a receiver under the seventh clause of section 1222, *supra*, providing that a receiver may be appointed "in such other cases as may be provided by law, or when, in the discretion of the court, or the judge thereof in vacation, it may be necessary to secure ample justice to the parties." The court said. "Indeed, it was a case eminently proper for the exercise of such power. Those who owned the majority of the stock in the corporation, and were able by reason of that fact to control the road, seem to have been derelict in the matter of repairs thus endangering the rights of the other interested parties, and rendering the property non-productive. Under these circumstances it was the duty of the court, when asked to do so, to take such steps as would secure to the minority stockholders their rights

in the property, and we know of no means by which this could be accomplished except by the appointment of a receiver.''

In the same case the court says: ''By their complaint the appellees sought nothing further than an accounting and the appointment of a receiver, and they were not entitled to more than they sought,'' the court holding that under the issues joined on the complaint it was error to order a sale of the road of the corporation. The relief sought in that case differs but little from that sought in this or obtainable in this. The result in this action must be an accounting by the officers for the money received by them belonging to the corporation, and the payment of it over to the receiver, and the appointment of a receiver, and the decision is in harmony with, and supports, the views we have herein announced as to the rights of parties to the appointment of receivers under our statute. The appellees had a right to have the funds protected, preserved, and applied to their proper use, and the corporation perpetuated. The complaint states a good cause for the appointment of a receiver, and the presumption is that the proof made under it fully sustained the action of the court in the appointment of a receiver. There are some minor questions discussed, which we have considered and in which there is no error, and we deem it unnecessary to discuss them.

The conclusion we have reached leads to an affirmance of the judgment.

Judgment affirmed.

Filed April 26, 1893.