UNION NATIONAL BANK OF COLUMBUS v. SAMUEL WINSOR and
Others.[1]

July 5, 1907.

Nos. 15,236—(191).

**Discount of Note—Crediting Seller's Account.**

A bank, by purchasing or discounting a note for a depositor and giving him credit for the proceeds on his deposit account, does not, so long as no part of the deposit is drawn out or the balance of the account exceeds the amount of the proceeds of the discount, become a bona fide purchaser of the note for value, so as to be protected against infirmities in the paper.

Action in the district court for Mille Lacs county to recover $840 upon a promissory note executed by the twelve defendants. The case was tried before Searle, J., who directed the jury to return a verdict in favor of plaintiff. From an order denying a new trial, Taylor, J., defendants appealed. Reversed.

*Charles A. Dickey* and *George C. Stiles,* for appellants.

*Reynolds & Roeser,* for respondent.

ELLIOTT, J.

The Union National Bank of Columbus, Ohio, brought an action against Samuel Winsor and eleven other persons to recover the sum of $840 and interest thereon, alleged to be due upon a certain promissory note dated June 11, 1902, due July 1, 1905, signed by the defendants, payable to McLaughlin Bros., and by said payees claimed to have been transferred, sold, and assigned for a good and valuable consideration to the bank before maturity. The answer denied that the bank was a bona fide purchaser of the note for value before maturity, and alleged that the note was obtained by McLaughlin Bros. through fraud and false representation. When the case came to trial it was conceded, for the purposes of a motion to direct a verdict in favor of the plaintiff on the ground that it was a bona fide purchaser of the note for value, that the note was obtained by fraud, and that as between McLaughlin Bros. and defendants a defense existed, or at least that the evidence was such as required the issue to be submitted to the jury.

[1]Reported in 112 N. W. 999.

The court directed a verdict for the plaintiff on the ground that the undisputed evidence showed that the plaintiff bank purchased the note in good faith before it became due and paid therefor the sum of $840. The appeal is from an order denying the defendants' motion for a new trial.

The question is whether the evidence required the court to direct a verdict in favor of the plaintiff. McLaughlin Bros. were dealers in horses, and through their agents sold a stallion to the appellants. The note upon which this suit was brought was one of three given as a consideration for a horse. McLaughlin Bros., who resided in Ohio, assigned and delivered the note to the Union National Bank of Columbus. It appears that the bank took the note in good faith without knowledge of the fraud; but it also appears that the bank paid McLaughlin Bros. nothing for the note. John R. McLaughlin, a member of the firm of McLaughlin Bros., testified that he sold the note to the Union National Bank and that the money received therefor was placed to the credit of McLaughlin Bros. The cashier of the bank testified as follows:

Q. How much, if anything, did the bank pay McLaughlin Bros. for this note? A. Eight hundred forty dollars. Q. How was this amount paid? A. It was credited to their account in the ledger. * * * Q. You may state from your personal knowledge, if you can, how soon after credit was given to McLaughlin Bros. for this note that they drew the money out of the bank? A. The only answer I could give to that question would be that all of the deposits of McLaughlin Bros. are checked out from time to time in the regular course of business. This, as all others, was checked out in the regular course of business. Q. Can you state what their balance was on April 24, 1905? A. Yes, I can; $19,002.66 is the amount of their balance after this credit was given them on April 24, 1905. Q. Can you state from your personal knowledge what their balance was on July 1, 1905? A. $6,927.16.

It does not appear that the account of McLaughlin Bros. was at any time less than the sum last mentioned. This does not show that the bank was a purchaser for value.

Where a bank discounts paper for a depositor, and gives him credit upon its books for the proceeds of such paper, it is not a bona fide holder for value, so as to be protected against infirmities in the paper, unless, in addition to the mere fact of crediting the depositor with the proceeds of the paper, some other and valuable consideration passes. Such a transaction simply creates the relation of debtor and creditor between the bank and the depositor, and so long as that relation continues and the deposit is not drawn out the bank stands in the same position as the original party to whom the paper was made payable, even though the bank took the paper before maturity and without notice. By giving credit to the indorser on his deposit account the bank in effect agrees to pay him that amount of money on demand by check or order, and parts with nothing of value. As long as the amount thus credited remains undrawn by the depositor, the bank, if it receives notice of the fraud, is still in a position to return the note to the depositor and cancel the credit. As said by Mr. Justice Brewer in Mann v. Second, 30 Kan. 412, 422, 1 Pac. 579, 583: "The proposition rests on the plainest principles of justice, and in no manner impairs the desired negotiability and security of commercial paper. Whenever the holder is a bona fide holder, he has a right to claim protection, but protection only to the extent he has lost or been injured by the acquisition of the paper. If he has parted with value, either by a cash payment, or the cancellation of a debt, or giving time on a debt, or in any other manner, to that extent he has a right to claim protection; but, when he has parted with nothing, there is nothing to protect. A mere promise to pay is no payment. He may rightfully say to the party from whom he purchased, 'The paper you have given me is valueless, and therefore I am under no obligations to pay;' and, if the paper be in fact valueless, payment cannot be compelled. Now, the relation of a bank to its depositor is simply that of debtor. The bank owes the depositor so much. If the deposit is valueless, its obligation to pay is without consideration, and it may decline to pay. There is nothing in the relation of a bank to its depositor which takes its obligation to its depositor out of the general rule of debtor to creditor." Manufacturers v. Newell, 71 Wis. 300, 37 N. W. 420; Mann v. Second, supra; Fox v. Bank, 30 Kan. 441, 1 Pac. 789; Dreilling v. First, 43 Kan. 197, 23 Pac. 94, 19 Am. St. 126; Lancaster v. Huver, 114

Pa. St. 216, 6 Atl. 141; Dresser v. Missouri & I. Ry. C. Co., 93 U. S. 92, 23 L. Ed. 815; Thompson v. Sioux Falls Nat. Bank, 150 U. S. 231, 244, 14 Sup. Ct. 94, 37 L. Ed. 1063; Drovers v. Blue, 110 Mich. 31, 67 N. W. 1105, 64 Am. St. 327; City v. Green (Iowa) 103 N. W. 96; Merchants v. Marine, 3 Gill, 96, 48 Am. Dec. 300; Central v. Valentine, 18 Hun, 417, and cases cited; Albany v. People, 92 App. Div. 47, 86 N. Y. Supp. 773; Citizens v. Cowles, 180 N. Y. 346, 73 N. E. 33, 105 Am. St. 765; 2 Morse, Banks & Banking, § 603; 1 Daniel, Neg. Inst. (5th Ed.) § 779b; 4 Am. & Eng. Enc. (2d Ed.) 298; 7 Cyc. 929; Randolph, Com. Paper, § 994.

The burden was upon the plaintiff to show that it paid a valuable consideration for the note. This it failed to do. The evidence shows that when the note was discounted the bank was the debtor of McLaughlin Bros. to a large amount, and that the only effect of the discount of the note was to increase the indebtedness by the amount of $840. So long as McLaughlin Bros. did not reduce their account to less than $840, the bank was not a purchaser of the note for value. Upon receiving notice of the fraud, it had the right to charge the note to McLaughlin Bros.' account and leave them to contest the validity of the note with the makers.

The order is therefore reversed, and a new trial granted.