VARNEY v. NATIONAL CITY BANK OF INDIANAPOLIS.

[No. 11,356.   Filed May 10, 1923.   Rehearing denied October 5,
1923.   Transfer denied December 14, 1923.]

1. PLEADING.—*Theory of.*—*Averments Control.*—*Prayer for Re-
lief.*—An answer filed in a suit on a promissory note which
alleges that the note was procured by fraudulent representa-
tions as to the value of the stock for which the note was given,
that the defendant relied on the representations so made, and
was thereby induced to enter into the contract for the pur-
chase of the stock, is a plea of fraud, notwithstanding a state-
ment in the prayer that the consideration of the note had
failed, since a pleading is to be tested and construed by the
facts averred therein, and is not controlled by its prayer for
relief.   p. 599.

2. TRIAL.— *Peremptory Instruction.*— *Evidence Considered.*— In
passing on a motion for peremptory instruction, the trial court
must accept as true all facts which the evidence tends to
prove, and, as against the party requesting such instruction,
must draw all inferences which the jury might reasonably
draw, and, if the evidence is conflicting, only that which is
favorable to the party against whom the instruction is asked
can be considered.   p. 603.

3. BILLS AND NOTES.—*Purchase in Due Course.*—*Burden of
Proof.*—*Statute.*—In an action by the indorsee of a note against
the maker, where the evidence for defendant established that
the note was given in payment for certain shares of stock in
the payee company, with an agreement on the part of the
payee for certain renewal privileges and that the note should
be attached to the certificates of stock subscribed for, and
should be retained in the possession of the payee company and
not negotiated, and that it was negotiated in violation of such
agreement, and that the president of the payee company, at
the time of the purchase of said stock, falsely represented the
value of the stock and the solvency of the company, under the
provisions of the Negotiable Instruments Law (Acts 1913 p.
120, §§9089c2, 9089g2 Burns 1914), the burden of proving that
he was a holder in due course was on the plaintiff.   p. 603.

4. BILLS AND NOTES.—*Holder in Due Course.*—*Evidence.*—*Suf-
ficiency.*—Evidence that a bank discounted paper for a de-
positor, giving him credit on the books of the bank for the
proceeds thereof, is not sufficient to show that the bank is a
*bona fide* holder for value so as to be protected against in-
firmities in the paper unless, in addition thereto, it is shown
that the credit is absorbed by being applied to an antecedent

indebtedness or exhausted by withdrawal, or some other and valuable consideration passes. p. 603.

5. BILLS AND NOTES.—*Fraud Pleaded.*—*Reliance on Representations.*—*Evidence.*—When fraud in obtaining the execution of a note has been pleaded, the fact of reliance on the fraudulent representations may sometimes be inferred from the circumstances of the transaction. p. 604.

6. BILLS AND NOTES.—*Fraud Pleaded.*—*Reliance on Representations.*—*Question for Jury.*—In an action on a negotiable instrument, where fraud is pleaded as a defense, the question of whether the defendant relied on the false representations is one for the jury, and if there is any evidence to support the allegation, it is error for the court to instruct the jury to find for the plaintiff. p. 604.

From Hendricks Circuit Court; *Zimri E. Dougan,* Judge.

Action by National City Bank of Indianapolis against Gordon E. Varney. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Russell T. McFall, Matson, Kane & Ross* and *George Brill,* for appellant.

*James W. Noel, Hubert Hickam* and *Alan W. Boyd,* for appellee.

REMY, J.—Action by appellee on a promissory note for $2,500, executed by appellant, March 12, 1917, payable with interest to the order of American Underwriters, Inc. hereinafter designated American Underwriters. The note was due four months after date, and payable at appellee bank. It is averred in the complaint that for value received, and before maturity, the note had by payee been assigned to appellee. Appellant, in addition to the general issue and a plea of payment, filed five special answers setting up failure of consideration and fraud. In our view, it will not be necessary to make further reference to appellant's answer, except as to the sixth paragraph, material averments of which are, in substance, that appellant executed a written subscription for certain

shares of the preferred stock of the American Under-
writers, and that concurrently with the execution
of such subscription contract, and as a part of the same
transaction, the note in suit was executed by appellant
in payment for such stock; that at the time the sub-
scription was made and the note executed, it was
further agreed between the American Underwriters
and appellant that, upon maturity, appellant might pay
ten per cent. of the note and renew for the balance, with
like privileges as to renewal notes upon maturity; that
the note so executed was put in possession of payee
under an agreement that the note, and any note given
in renewal thereof, should be attached to the certifi-
cate of the stock subscribed for, and should be retained
in the ownership and possession of the payee company,
and not negotiated; that thereafter, and in violation of
this agreement, the note was endorsed and delivered to
appellee, at which time appellee had notice of the agree-
ment as to right of renewal and that the note was not
to be negotiated; that at the time appellant purchased
the stock, the American Underwriters falsely and fraud-
ulently represented to appellant that the company had
assets sufficient, so that if it should go into liquida-
tion it could and would pay all of its indebtedness, and
have a surplus large enough to pay at least two dol-
lars for every dollar of the company's stock, and: "That
said company was earning large sums of money and had
earned and paid dividends upon its preferred shares
of capital stock from its earnings, from the very start
of the company, at the rate provided to be paid in the
certificates and as stated in said contract with defend-
ant, except the last year, and then with the consent of
the stockholders the money to pay the dividend had
been reserved to improve and open up mineral land of
the company, and that oil wells were then being sunk
on company lands where it was absolutely certain that

oil would be found, and where in the immediate vicinity large oil and gas wells had been found; but defendant avers that as a matter of fact said company was at the time insolvent and had not paid any dividends out of the earnings of the company, but the dividends that had been paid were paid wholly out of the proceeds of sales of stock of the company, and said company had not earned, and was not earning, any money from which dividends could be legally paid, and its said shares of preferred stock then were, and are, of no value."

It is further averred that appellant relied upon the representations so made, and was thereby induced to enter into the contract for the purchase of the stock. The paragraph closes with the following prayer: "Wherefore, this defendant says that the consideration of the note sued on has wholly failed, and he asks that he may go hence with judgment for his costs."

The theory of this answer, when read as a whole, is that the note was procured by the payee by fraudulent representations as to the value of the stock. The allegation in the prayer that the consideration of the note had failed is not controlling. A pleading is to be tested and construed by the facts averred therein, and not by its prayer for relief. *McGuffey* v. *McClain* (1892), 130 Ind. 327, 30 N. E. 296; *Crawfordsville Trust Co.* v. *Ramsey* (1912), 178 Ind. 258, 98 N. E. 177; *Supreme Sitting, etc.,* v. *Baker* (1893), 134 Ind. 293, 314, 33 N. E. 1128, 20 L. R. A. 210.

The issues were closed by a reply in denial, and two affirmative replies pleading facts to show that appellee was a *bona fide* holder in due course.

The cause came on for trial with a jury. At the conclusion of the evidence, the trial court, on motion of appellee, peremptorily instructed the jury to return a verdict for appellee for the amount of the note, and judgment was rendered accordingly.

Appellee having made out a *prima facie* case by the introduction in evidence of the note and endorsement, appellant submitted evidence tending to prove that the note was given in payment of certain shares of preferred stock in the payee company; that the note was received by appellee bank under an arrangement made with payee whereby appellee was to discount this and other notes so taken by payee, it being understood at the time that the makers, including appellant, should have the right to renew upon part payment being made; that at the time appellant purchased the stock and gave the note in suit one Hedgepeth, then president of the American Underwriters, the payee company, called upon appellant at his office, and represented that out of money accumulated from earnings of the company, dividends were being paid to stockholders regularly; that the company had gas and oil leases on the lands of the Red River Valley Development Company, the income from which was more than sufficient to take care of all interest charges, and that the stock appellant was purchasing would, before a great while, be worth two or three for one; that payee company had sufficient assets to liquidate all its liabilities, and have left over an amount equal to two and possibly three times the amount of the stock subscription; that it was immediately following these representations that appellant, through Hedgepeth, purchased the stock and executed the note in suit. The evidence further tends to prove that the American Underwriters had not paid any dividends on its stock for two and one-half years prior to April 1, 1917, and on that date, which was but nineteen days after the execution of the note in suit, was hopelessly insolvent.

It is contended by appellant that there is evidence that the execution of the note by appellant was procured by fraud, thus placing the burden upon appellee

to prove title as a holder in due course, and that it was, therefore, error to direct the verdict. Appellee, on the contrary contends that there is no evidence of fraud, and that its motion to withdraw the case from the jury was properly sustained.

In passing upon a motion for peremptory instruction, the trial court must accept as true all facts which the evidence tends to prove, and, as against the party 2-4. requesting such instruction, must draw all inferences which the jury might reasonably draw. If the evidence is conflicting, it is only the evidence which is favorable to the party against whom the instruction is asked, that can be considered. *Lyons* v. *City of New Albany* (1913), 54 Ind. App. 416, 103 N. E. 20, and cases there cited.

Sections 55 and 59 of the Negotiable Instruments Act of 1913 (Acts 1913 p. 120, §§9089c2, 9089g2 Burns 1914) provide as follows:

"55. The title of a person who negotiates an instrument is defective within the meaning of this act when he obtains the instrument, or any signature thereto, by fraud * * * or when he negotiates it in breach of faith, or under such circumstances as amount to fraud."

"59. Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course. But the last-mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

Governed by these statutes, and keeping in mind the above rule of law fixing the duty of the trial court in considering the evidence when called upon to rule on a motion for a peremptory instruction, we are con-

strained to hold that the evidence on the issue of fraud as presented by the sixth paragraph of answer was sufficient to place the burden upon appellee to prove that it acquired title in due course. Appellee does not claim that it has discharged this burden; the only evidence on this phase of the case would indicate that appellee was not a holder in due course. The president of appellee bank testified: "I can state from the deposit slip that the bank purchased the note March 14, 1917. It paid American Underwriters $2,500 for the note. This slip shows that they got credit on that date. * * * The slip is in my handwriting. I handed the slip to the bookkeeper, and credit was given in the usual course." This evidence alone would not be sufficient, for the law is settled that if a bank discounts paper for a depositor, giving him credit upon the books of the bank for the proceeds thereof, the bank is not a *bona fide* holder for value, so as to be protected against infirmities in the paper, unless, in addition to the mere fact of crediting the depositor with the proceeds, the credit is absorbed by being applied to an antecedent indebtedness or exhausted by subsequent withdrawal, or some other and valuable consideration passes. *Union National Bank* v. *Winsor* (1907), 101 Minn. 470, 112 N. W. 999, 118 Am: St. 641, 11 Ann. Cas. 204; *Alabama Grocery Co.* v. *First Nat. Bank* (1908), 158 Ala. 143, 48 So. 340, 132 Am. St. 18; *McNight* v. *Parsons* (1907), 136 Iowa 390, 113 N. W. 858, 125 Am. St. 265, 15 Ann. Cas. 665, 22 L. R. A. (N. S.) 718; 3 R. C. L. 1055.

It is suggested by appellee that the evidence does not show that appellant, when he purchased the stock and executed the note therefor, relied upon the representations made. We cannot concur in this view. There is no evidence that appellant made any independent investigation, or that he was in possession of any information as to the value of the stock

except such as was received by him from Hedgepeth at the time the note was given. Besides, Hedgepeth was not a mere stock salesman. He was president of the company, the stock of which he was selling. The representations as to the value of the stock, other than the statement that the stock would, before a great while, be worth two or three for one, are statements of existing facts, the truth or falsity of which must have been known to Hedgepeth at the time they were made. To be sure, appellant did not state in his testimony, in direct terms, that he executed the note in reliance upon the representations made. However, the fact of reliance may sometimes be inferred from the circumstances of the transaction. *Crouch* v. *Chamnes* (1898), 21 Ind. App. 492, 51 N. E. 491; *Chilson* v. *Houston* (1900), 9 N. D. 498, 84 N. W. 354; *Ste. Marie* v. *Wells* (1919), 93 Vt. 398, 108 Atl. 270; *Harpanola Co.* v. *Wilson* (1923), 96 Vt. 427, 120 Atl. 895; *Nash* v. *Minnesota Title, etc., Co.* (1893), 159 Mass. 437, 443, 34 N. E. 625; *Sanders* v. *Nightengale* (1923), 109 Nebr. 667, 192 N. W. 200; *Merrill* v. *Benner* (1922), 121 Me. 592, 118 Atl. 296. See, also, *Ingalls* v. *Miller* (1889), 121 Ind. 188, 22 N. E. 995; *Jones* v. *Hathaway* (1881), 77 Ind. 14, 21; *Fargo Gas & Coke Co.* v. *Fargo Gas & Elec. Co.* (1894), 4 N. D. 219, 59 N. W. 1066, 37 L. R. A. 593; *Aultman, etc., Machinery Co.* v. *Schierkolk* (1915), 95 Kans. 737, 149 Pac. 680. In the case at bar, it is in evidence that immediately following the making of the representations, appellant subscribed for the stock and executed his promissory note for $2,500 due four months after date. This is some evidence that appellant relied upon the representations made to him. Whether, under the facts of this case, appellant relied upon the representations made to him by the payee company through its president, and in reliance upon such representations subscribed for the stock and exe-

cuted his note, was a question of fact for the jury. It follows that the court erred in instructing the jury to return a verdict for appellee.

Other questions properly presented are not likely to arise in another trial, and are, therefore, not discussed. A recent opinion of this court, which may prove instructive on a retrial of this cause is *National City Bank* v. *Kirk* (1922), (Ind. App.) 134 N. E. 772.

Reversed, with instructions to grant a new trial.