STATE SOLICITORS' COMPANY, A CORPORATION EXISTING UNDER THE LAWS OF PENNSYLVANIA, APPELLANT, VS. THOMAS E. SAVAGE, ET UX., APPELLEES.

1. A surety is liable only to the extent of his engagement, and where a promissory note upon which he is bound as surety has been materially altered without his consent, it will be avoided as to him.

2. A material change in the original agreement can not be said to have been attempted by any alteration of the written evidence of it, when a new and distinct agreement is made and endorsed upon it in such a manner as to show that the endorsement is of a new agreement, in no way altering or affecting the language of the original agreement.

3. A executed a note for $1,500, payable to B or order, and C and wife executed a mortgage to B on real estate to secure the note. The note and mortgage were executed and delivered to B, for purposes of negotiation, and before maturity he nego-

45

tiated the same for $1.000 to a purchaser without any knowledge of any understanding between the parties in reference to the negotiation, at the same time writing on the face of the note below the signature of the maker the following: "Pay :to the order of the Solicitors' Company, Philadelphia. the said principal sum being reduced to one thousand dollars," and .also endorsing upon the mortgage that, "the debt due on note, for which the within mortgage is given to secure, is reduced to one thousand dollars ($1,000)": *Held*, that this was not an alteration of the note itself, but evidence of a new and distinct agreement, and in legal effect a credit of $500 on the note.

Appeal from the Circuit Court for Volusia county.

### STATEMENT.

The appellant company filed a bill against appellees, husband and wife, to foreclose a mortgage executed by them to Charles Swayne to secure the payment of a note of $1,500, executed by one C. C. Sutton to Charles Swayne, and alleged to have been transferred and assigned to complainant. The note and mortgage are made exhibits to the bill and as parts thereof. It appears that the note is for $1,500, dated the 25th day of June, 1886, and payable to Charles Swayne, or order, two years after date, with interest at the rate of ten *per cent. per annum,* and payable semi-annually in advance. The mortgage is dated the 26th of June, 1886, and recites that it was executed to secure the payment of the note and interest, and costs and attorney's fees in the event of a foreclosure. The note has written on its face below the signature of Sutton the following, *viz:* "Pay to the order of the Solicitors' Company, Philadelphia, the said principal sum being reduced to one thousand dollars. (Signed) Chas. Swayne." There is also the following endorsement of the mortgage. *viz:*

"PHILADELPHIA, July 8th, 1886.

The debt due on note, for which the within mortgage is given to secure, is reduced to one thousand dollars ($1,000).

(Signed) CHAS. SWAYNE."

The defendant Thomas E. Savage interposed a plea in substance as follows, *viz:* That the mortgage mentioned in the bill was executed to secure and give credit to a promissory note of $1,500 given by C. C. Sutton to Charles Swayne; that both note and mortgage were delivered to Charles Swayne for negotiation and to procure thereon the said sum of $1,500, one-half of which was to be paid to defendants and the remainder to be retained for the mutual benefit of said Sutton and Swayne; that after the execution of said mortgage, the complainant, knowing the purposes for which Charles Swayne held said note and mortgage, made an agreement with him, in accordance with which the said note was changed and altered by him into a note of $1,000, by an endorsement made on the face of said note, without the consent or knowledge of either of said defendants, and which said note, changed as stated, was discounted by complainant by paying to Charles Swayne the sum of $800, and retaining $200 as interest thereon in advance. That by said wrongful alteration, the contract on which defendant was responsible as surety was changed, and defendant thereby became released from all liability on the same; and that defendant never ratified the contract made by Charles Swayne with the complainant company, and has never in any way agreed to be bound thereon, and that no part of said $800 received thereon by Swayne has ever been paid to or received by this defendant or his co-defendant Sarah J. Savage.

The defendant Sarah J. Savage interposed a plea alleging substantially the same state of facts as in the foregoing plea of her co-defendant.

After issue joined on the pleas and testimony submitted, the court sustained the defenses and dismissed the bill. Complainant appealed.

A statement of facts appear in the opinion of the court.

*N. B. K. Pettingill,* for Appellant.

*Isaac A. Stewart,* for Appellees.

MABRY, J.:

The decision of this case in the Circuit Court on its merits was in favor of the defendants under pleas interposed by them, and as the testimony of the parties placed all the facts before the court, and which are now in the transcript before us, we will dispose of the case on its merits here.

It was shown that the title to the real estate described in the mortgage executed by appellees was in the wife, Sarah J. Savage, and that the mortgage was executed to secure and give credit to a note of $1,500 executed by C. C. Sutton to Charles Swayne. It was well understood by all parties, the mortgagors, as well as the maker and payee in the note, that the object was to raise money by negotiating the papers, and to this end they were executed and placed in the hands of Charles Swayne. There is some conflict in the evidence as to whether Savage and wife were to share in the funds to be derived from the negotiation of the note, and also as to the amount that should be realized therefrom. Appellees testify that the note was

to be negotiated for its face value or returned, and that they were to have one-half of the money. There was testimony tending to show that the note was to be negotiated for less than its face value, if that amount could not be realized, and that appellees were to have no part of the money.

It is not necessary that we decide upon whose side the weight of the evidence lies in reference to the conflict mentioned, as we are of the opinion that the decision reached in the Circuit Court was erroneous, conceding that appellees are right in their contention in reference to the amount for which the note was to be negotiated and the share they were to have in the funds realized therefrom. It is certain that the note and mortgage were executed and delivered to the payee named therein for negotiation, and that in a few days thereafter, and long before the maturity of the note, he sold the same to appellant. The latter had no knowledge at the time of the purchase that the note and mortgage had been delivered to the payee named simply for negotiation, and the purchase was made from him as owner and holder for value.

The decision of the Circuit Court evidently was based upon the view that appellees were sureties of Sutton, and that by the endorsement made on the note and mortgage, as shown in the statement, at the time of their transfer to appellant, the note was materially altered, without the knowledge and consent of appellees, and that they became released and discharged thereby. To sustain this conclusion the familiar rule is invoked that a surety can only be held liable by the letter of his engagement, and that any material alteration of its terms between principal and creditor, without the surety's consent, will avoid the obligation

as to him. The rule is sound, but it does not apply to the facts of this case, as there has been, in our opinion, no alteration of the original contract between Sutton, the maker of the note, and the payee therein. At the time of the purchase of the note by appellant no information was given that appellees were sureties simply; but conceding that knowledge of all that is imparted by the papers themselves must be imputed to the purchaser, it may be assumed that appellant had knowledge of the relation of the suretyship existing between appellees and Sutton. They will not, however, be released thereby from their obligation, unless it has been materially altered after execution and delivery without their knowledge and consent. There has been no change in the original physical form of the note, by erasure or interlineation, and while it may be conceded that a note may be altered by endorsements or memoranda thereon without disturbing its physical appearance (its true meaning being obtained from the four corners of the instrument)—1 Daniel on Neg. Inst., sec. 149 *et seq.;* 2 Daniel on Neg. Inst., sec. 1397—yet if the memoranda or endorsements do not have the legal effect to alter the legal import and operation of the note, but express a new, distinct and collateral agreement between the payee and principal named therein, it will only be evidence of the new agreement intended, and it can not be said that the note, the evidence of the prior agreement, was thereby altered. As said in one case, "a change in the original contract can not be said to have been attempted by an alteration of the written evidence of it, when a new and distinct agreement is made and endorsed upon the note in such a manner as to show that the endorsement is of a new agreement, and that in no manner

can it alter or affect the language of the note." A valid agreement upon sufficient consideration between the holder and maker of a note, without the consent of a surety, extending for a definite time the payment of the note, will operate to release the surety; but such an agreement can not be said to alter the original contract of payment. It relates to the original contract, but is a new agreement in relation thereto and outside of it. The most favorable view that can be taken of the testimony to sustain the contention of appellees is that Charles Swayne, the payee of the note, tried to negotiate it for its face value, and failing in this, negotiated it for $1,000 to the complainant company. Before delivering the papers he made the endorsements as shown by the statement, but appellant had no knowledge other than that he was owner of the note. This was not an alteration of the note, but in legal effect a credit of five hundred dollars on it. This view is sustained by the decision in the case of M. & M. Bank vs. Evans & Dorsey, 9 W. Va. 373, where a joint note, signed by several parties, for $6,000 was presented by the principal in fact, and the bank discounted it for $4,000, only, putting the following endorsement on the note, "discounted for $4,000 only, and should be so read," and this was done without the knowledge or consent of the sureties in the note. It was held that they were bound, the transaction being equivalent to a discounting for $6,000 and a repayment by the principal of $2,000 thereon. A memorandum was made on a promissory note by the holder that after a certain date the rate of interest would be less than that stated in the body of the note, and it was held to be no alteration of the note. Cambridge Sav. Bank vs. Hyde *et al.*, 131 Mass. 77, S. C. 41 Am. Rep.

193. The case of Moore vs. Macon Savings Bank, 22 Mo. App. 684, contains a full discussion of the point, and sustains our view. *Vide* also Laub vs. Rudd, 37 Iowa, 617; Bucklen vs. Huff, 53 Ind. 474; Huff vs. Cole, 45 Ind. 300. The cases of Portage County Branch Bank vs. Lane, 8 Ohio St. 405, and Douglass vs. Wilkinson, 17 Wend. 431, would seem to hold an opposite view, but there are distinguishing features in their facts, and, when properly considered in connection with the point decided, may not be opposed to the conclusion we reach. It is not contended that the new or collateral agreement was detrimental in any way to the appellees.

The suit here is to foreclose a mortgage containing a covenant to pay the note given by Sutton for $1,500, and also to pay that sum of money. The conclusion we have reached makes it unnecessary to determine anything in reference to appellant's right to enforce the foreclosure of the mortgage independent of the question of the alteration of the note given by C. C. Sutton to Charles Swayne. As there has been no alteration of said note, the court should have overruled the pleas and granted a decree of foreclosure of the mortgage; and the decree rendered will be reversed, with directions to enter such a decree, and for such further proceedings in the premises that may be consistent with the practice of the court. Order to be entered accordingly.