JOHN H. BLAND, *Plaintiff in Error,* v. FIDELITY TRUST COMPANY, A CORPORATION, *Defendant in Error.*

## Opinion filed April 12, 1916.

1. An endorsement of payment on an instrument promising to pay money has no more validity or effect than a receipt, and the addition of such an endorsement does not have the effect of vitiating the instrument.

2. The knowledge afforded by mere endorsements of partial payments on a negotiable note as of the date of its issue do not make the purchase of the note "amount to bad faith."

3. Where there is no evidence of a defect in the title of a payee to a negotiable note, a presumption exists in favor of an endorsee as a holder in due course.

4. If error be committed in excluding evidence affecting the title of the payees of a negotiable note, which evidence would put upon the plaintiff holders the burden of proving that they "acquired the title as a holder in due course," such error, if any, may not be harmful where proof is made that the plaintiff is a holder in due course.

5. If a mere credit upon the books of a bank does not of itself amount to the payment of a valuable consideration, the withdrawal by check of a substantial part of the amount so credited is such payment.

6. Where there is no opposing evidence, it is not necessary to submit the case to the jury when the evidence clearly shows the right of the plaintiff to recover.

7. When the evidence would not have supported a verdict for the defendant, and no material or harmful error was committed in admitting or excluding evidence, a directed verdict for the plaintiff is proper.

Writ of Error to Circuit Court, Duval County; D. A. Simmons, Judge.

Judgment affirmed.

*Cockrell & Cockrell, B. B. MacDonald, J. S. Max-well* and *G. J. Patterson,* for Plaintiff in Error;

*Kay & Doggett,* for Defendant in Error.

WHITFIELD, J.—The declaration herein alleges that Bland on May 4, 1908, by his negotiable promissory note of that date, promised to pay McLaughlin Brothers or order the sum of $1,666.00 three years after date, with interest at 6% per annum, said interest payable annually; that said McLaughlin Brothers thereafterwards for value and before maturity endorsed the said note to plaintiff, Fidelity Trust Company, who was a *bona fide* purchaser of the same, whereby defendant became liable and promised to pay plaintiff the contents of said note according to the tenor thereof, which said contents of said note, with the exception of the sum of $264.00 which latter sum has been paid on said note, as shown by the receipts endorsed on the back of said note; that no part of the said amount so remaining due has been paid. The note and the endorsements thereon are as follows:

"$1,666.00
264.
———
1,402.00
252.36
———
1,654.36

Jacksonville, Fla., May 4th, 1908. Three years after date, for value received, we jointly and severally promise to pay McLaughlin Bros., or order, Sixteen hundred and sixty-six 00-100 Dollars, at the Florida Nat. Bank of Jacksonville, with interest at six per cent. per annum interest payable annually.

W. B. Talley                        D. A. Campbell
F. K. Gardner                       W. L. Diggins
John H. Bland                       G. W. Sanders
A. McNulty                          C. F. Flynn
Chas. Burnette                      George Francis
Chas. H. Howard                     A. Drysdale
W. R. Sebring                       J. F. Broward
C. M. Lowe                          J. R. Wilson
Frank M. Canepa                     T. J. Smith
I. L. Farris                        Dick Oldham
              Thos. C. Thompson, M. D.

(Florida National Bank 32983.  Jacksonville, Fla.)
Received on the within note
From I. G. & J. A. Melson _____$66.oo
    "    A. R. Muller _____ 66.oo
May 4, 1908, paid _____ 66.oo
    "    "    "    " _____ 66.oo
    Demand, notice of non-payment and protest waived.
                        McLaughlin Bros."

The following pleas were filed and issue joined
thereon:
"That the note set up and sued upon is not his note
and that he never executed the note attached to and made
a part of said declaration.

2. And for a second plea to the plaintiff's declara-
tion, defendant says that the said note sued on was giv-
en solely in consideration of a horse sold by said payees
solely for breeding purposes, and said payees represented
said horse to be a sound stallion good for breeding pur-
poses, and this defendant says that said horse then and
there was not a sound stallion good for breeding pur-
poses, and that the consideration of said note wholly

failed; and that the said plaintiff is not a holder of said note in due course.

3.   And for a third plea to said declaration defendant says that McLaughlin Brothers obtained the signature of this defendant to said note by fraud in this, that McLaughlin Brothers represented to this defendant that this defendant would only be responsible for one twenty-fifth of the amount of said note and that said note would be signed by twenty-four persons other than this defendant, said twenty-four other persons including C. C. Bettes, I. G. and J. A. Melson, A. R. Muller and D. H. McMillan; said C. C. Bettes, I. G. and J. A. Melson, A. R. Muller and D. H. McMillan so named were then and there solvent and the promise that they would sign the note was a material inducement to this defendant in signing said note; and the defendant says that the plaintiff is not a holder of said note in due course.

4.   And for a fourth plea to the declaration defendant says that the consideration for which the said note mentioned in the declaration was given was the promise of McLaughlin Brothers to organize a corporation under the laws of Florida, to transfer to such corporation the title to one French Coach Stallion then owned by the said McLaughlin Brothers, to issue and to deliver to this defendant fully paid stock in such proposed corporation of the face value of Two hundred ($200.00) dollars; said proposed corporation has never been organized; no stock has ever been issued or delivered to this defendant in consideration for his signing said promissory note and the consideration of said note totally failed; and the defendant says that the plaintiff is not a holder of said note in due course."

There was judgment for the plaintiff on a directed verdict, and the defendant took writ of error.

The following provisions of the General Statutes have application in this case:

"2958. Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value."

"2962. Abuse or failure of consideration is a matter of defense as against any person not a holder in due course."

"2966. The indorsement must be an indorsement of the entire instrument. An indorsement, which purports to transfer to the indorsee a part only of the amount payable, or which purports to transfer the instrument to two or more indorsees severally, does not operate as a negotiation of the instrument. But where the instrument has been paid in part, it may be indorsed as to the residue."

"2985. A holder in due course is a holder who has taken the instrument under the following conditions:

1. That it is complete and regular upon its face;

2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

3. That he took it in good faith and for value;

4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

"2989. To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of such facts that his action in taking the instrument amounted to bad faith."

"2990. A holder in due course holds the instrument free from any defect of title of prior parties, and free

from defenses available to prior parties among them-
selves, and may enforce payment of the instrument for
the full amount thereof against all parties liable thereon."

"2992.  Every holder is deemed prima facie to be a
holder in due course; but when it is shown that the title
of any person who has negotiated the instrument was
defective, the burden is on the holder to prove that he or
some person under whom he claims acquaired the title
as a holder in due course.  But the last mentioned rule
does not apply in favor of a party who became bound on
the instrument prior to the acquisition of such defective
title."

"3046.  Where a negotiable instrument is materially
altered without the assent of all parties liable thereto, it
is voided, except as against a party who has himself
made, authorized or assented to the alteration, and sub-
sequent indorsers.

But when an instrument has been materially altered
and is in the hands of a holder in due course, not a party
to the alteration, he may enforce payment thereof accord-
ing to its original tenor.

Any alteration which changes:

1.  The date;
2.  The sum payable, either for principal or interest;
3.  The time or place of payment;
4.  The number or the relations of the parties;
5.  The medium or currency in which payment is to
be made;

Or which adds a place of payment where no place of
payment is specified, or any other change or addition
which alters the effect of the instrument in any respect,
is a material alteration."   Sections 2958, 2962, 2966,

2985, 2989, 2990, 2992, 3046 Gen. Stats of 1906; ditto Compiled Laws of 1914.

Objections to the introduction of the note in evidence were overruled.

It is contended that the payments endorsed on the back of the note constitute "a material alteration in the amount of the note and a change or alteration on the face of the note."

The endorsements of payments on the back of the note do not change the "sum payable" or "alter the effect of the instrument in any respect" within the meaning of Section 3046 Gen. Stats. above quoted, though the endorsement bears the date of the note.

"To constitute a mutilation of a note or other contract which will void it, there must be some change or alteration in the writing constituting the evidence of the contract so as to make it another and different instrument, and no longer evidence of the contract which the parties made. The ground upon which the doctrine rests is that such an alteration avoids the instrument; that it destroys the identity of the contract. A memorandum of a payment endorsed by the holder on the back of a promissory note is no part of the contract of the parties. The original note, which constituted the evidence of their contract, remains intact. The memorandum of payment is merely evidence against the holder of the fact of the payment, and is of no more effect than if made on a separate piece of paper. Cambridge v. Hyde, 131 Mass. 77. Writing on the back of an instrument may be such as to form a part of the contract itself, and in such a case an alteration of the endorsement would constitute an alteration of the written evidence of the contract of the parties; but a memorandum of a partial payment endorsed by the holder on the back of a promissory note is not of

this character. It is neither a contract nor any part of a contract, but a mere acknowledgment, in the nature of a receipt of payment, which is open to contradiction or explanation by parol. Sears v. Wempner, 27 Minn. 351, 7 N. W. 362." Theopold v. Deike, 76 Minn. 121, 78 N. W. Rep. 977.

"An endorsement of payment on an instrument promising to pay money has no more validity or effect than a receipt, and the addition of such an endorsement does not have the effect of vitiating the instrument." 3 Ency. L. & P. 399. See also State Solicitors Co. v. Savage, 39 Fla. 703, 23 South. Rep. 413, where it was held that where a note for $1,500.00 is given, and an endorsement thereon is "pay to the order of S. the said principal sum being reduced to one thousand dollars," such an endorsement is not an alteration of the note itself, but is in legal effect a credit of $500.00 on the note.

In the case of Johnston v. May, 76 Ind. 293, cited by plaintiff in error, the endorsement on a note given for eleven hundred dollars for a definite purpose was: "Two hundred fifty-three dollars and 52-100, paid on this note April 1st, 1875, a sum in excess of indebtedness for which this note was given." The court held the endorsement and the use of the note as shown was such a "perversion or misapplication of the note" as released the surety from liability. The endorsements of part payments on the back of the note in this case did not invalidate the note or affect its negotiability. See Smith v. Shippey, 182 Pa. St. 24, 37 Atl. Rep. 844.

It is argued that because of the endorsements of partial payments the note is not "regular on its face," so as to make the plaintiff endorsee "a holder in due course," under Section 2985 of the General Statutes, and that the endorsements were of such a nature as to put the holder

upon inquiry before taking it, which inquiry would have shown the defenses claimed by the makers. While endorsements on a note of partial payments made on the date of the note by persons not parties to the note, may be somewhat unusual, such endorsements on this note does not make the note other than "complete and regular on its face." The purchaser of the note may reasonably have supposed the payments were made and endorsed on the back of the note after it was executed, though done on the day the note bears date; and the mere fact that two of the payments were made by persons not parties to the note did not require the purchaser to ascertain the reason for such endorsements in order to become "a holder in due course." The endorsements did not *ipso facto* cause "any infirmity in the instrument or defect in the title of the person negotiating it." The knowledge afforded by the endorsements of payment did not make the purchase of the note "amount to bad faith" under Section 2989. See 78 S. E. 224; 20 Idaho, 669; 129 N. W. 99; 124 Pac. 907; 167 S. W. 75.

A number of actions against makers of the note were consolidated for the purposes of trial. It was admitted or otherwise proven, that each of the makers signed the note sued upon. Presumably they became parties "thereto for value." See Sec. 2958, Gen. Stats.

A witness who purchased the note for the plaintiff testified that the note was purchased for value before its maturity and without any notice of infirmities in the payee's title. The witness specifically denied the averments of the pleas affecting the status of the plaintiff as a holder in due course of the note.

The court sustained objections to questions put on cross-examination to the plaintiff's witness for the purpose of showing "that the plaintiff had had a great many

transactions with the payees of the note, of like nature to this note wherein like infirmities existed between the payees and the makers as are pleaded in this case, known to the plaintiff prior to the alleged purchase of this particular note, and that plaintiff was aware prior to this transaction between the plaintiff and said payees of the fraudulent methods resorted to by the payees in securing such notes." The ruling was not erroneous since the matters referred to were not testified to on direct examination, and no abuse of judicial discretion appears. The supposed prior transactions were not shown to have any direct connection with the subject matter of this action, and the excluded questions were not merely to test the credibility of the witness.

The witness for the plaintiff testified that he purchased the note sued on with other notes in one transaction, crediting the payees $61,150.40 and that before plaintiff had any information or notice of any alleged infirmity or defect in the note, the total amount to the credit of the payees with the plaintiff "had been withdrawn several times." "Q. Please state whether or not McLaughlin Brothers drew upon their account to your bank between the time when your bank purchased this aggregation of notes which included the note sued on here and the first of January, 1911, to such an extent as to bring the total amount they had on deposit in your bank to a sum less than thirty thousand dollars. A. They drew on it so it was less than thirty thousand dollars between those dates." "Q. Please state whether or not McLaughlin Brothers drew upon their account in your bank between the time when your bank purchased this aggregation of notes and the first of January, 1911, to such an extent as to withdraw from your bank an amount at least equal to the total amount on deposit in your bank

at the close of the day on which their account was credited with the proceeds of the discount of the aggregation of notes just inquired about. A. They did."

A sheet taken from a ledger made "under the loose leaf system" was put in evidence in support of the testimony of the witness and used by him to refresh his memory.

It is urged that the evidence as to payment being of credits and withdrawals by draft, &c., was both incompetent and insufficient to show payment and that such evidence should at least have been submitted to the jury, whereas the court directed a verdict for the plaintiff. The defendant did not show that the title of the payees was defective or that the plaintiff was not a holder in due course, therefore the presumption in favor of the holder of the note remained. As the plaintiff's testimony tended to support and did not rebut the presumption existing in its favor, errors if any in admitting evidence could not reasonably have been harmful to the defendant. There was nothing put in evidence to destroy the presumption in favor of the plaintiff as holder in due course.

One of the makers of the note who was a witness for the defendant was asked "to state what signatures were on this note when you signed it." This question was objected to and "the defendants jointly and severally by their counsel announced their purpose to prove by this question and by further questions to this witness and by questions to other witnesses in the court room ready to testify the several infirmities in this note as set out in the several pleas, to-wit, that this note was given solely in consideration of a horse sold by the payees, McLaughlin Brothers, solely for breeding purposes, the said payees representing said horse to be a sound stallion good for breeding purposes, that said horse was not then

and there a sound stallion good for breeding purposes, and the consideration of said note wholly failed; that the payees obtained the signature of the defendants to this note by fraud in this that the payees represented to the defendants that each of them would only be responsible for one-twenty-fifth of the amount of this note and that this note would be signed by twenty-five persons in all including these defendants and also C. C. Bettes, I. G. & J. A. Melson, A. R. Muller and D. H. McMillan, and that the four parties last named were then and there solvent and the promise that they would sign this note was a material inducement to these defendants in signing this note; that the consideration for which this note was given was the promise of the payees to organize a corporation under the laws of Florida, to transfer to such corporation the title to one French Coach Stallion then owned by the payees, to issue and deliver to each of these defendants fully paid stock in that corporation of the face value of $200, that such corporation was never organized, no stock has been issued or demand to any of the defendants in consideration for his signing this note, and the consideration of this note has totally failed; that when each of these defendants signed this note, he signed two others all printed alike aggregating $5000 payable one, two and three years respectively after date, and as a part of the same transaction there was signed by all said twenty-five parties (including those whose names appear next underneath this note and two above mentioned whose names appear on the back of this note, and the two others above named C. C. Bettes and D. H. McMillan whose names do not appear anywhere on the note) a printed document furnished by the payees referring to said company to own said horse and the $200 stock to be issued to the signers aggregating $5000, and that said

payees when so securing the signatures of these defendants represented that the signatures to these notes of the other members (twenty-five in all) of the proposed company would be secured before the delivery of the note, that the signing was conditional upon securing the other signatures, that when the defendants signed this note and the other two notes there was no writing or printing on the note other than what is printed and written on the date line and on the body of the note and the signatures at the bottom thereof preceding those of the defendants respectively, that the writings on the note in these words,

```
            Received on the within note
From I. G. & J. A. Melson_____$66.00
   "    A. R. Miller _____ 66.00
May 9, 1908, paid_____ 66.00
   "    "     "      "     _____ 66.00
```

were all placed on said note after the same was signed by the defendants and before the completion of said transaction and was placed without the knowledge of the defendants, who none of them knew thereof until after the first of said three notes had matured and after the annual interest installment was past due on each of said notes and that said writings purported to represent the facts that four of said members of said proposed company had paid their twenty-fifth aliquot part of said $5,000, one-third each being thus noted on each of said three notes.

The same being argued and submitted the court ruled, on the objection of the plaintiff, that said several matters so proposed to be proven do not tend to show the plaintiff was not a holder in due course and that none of said proposed testimony is admissible."

These matters sought to be put in evidence if cov-

ered by the pleas would not have shown the plaintiff to be not a holder of the note in due course.

If error was committed in excluding this proffered testimony upon the theory that it was designed to affect the title of the payees of the note and thus to put upon the plaintiff the burden of proving that it "acquired the title as a holder in due course," such error was not harmful since under Section 2958 it is deemed prima facie that the makers of the note became parties thereto for value, and the plaintiff adduced evidence to prove good faith and the payment of value for the note, and there was no evidence offered that tended to show no payment of value or actual knowledge of infirmity in the note or other facts to show bad faith of the plaintiff in acquiring the note.

There was no contest as to other matters affecting the rights of the plaintiff as a holder in due course. The note was complete and regular on its face, and it was acquired by the plaintiff before its maturity.

In Union National Bank of Columbus v. Winsor, 101 Minn. 470, 112 N. W. Rep. 999, "it was *conceded* for the purpose of a motion to direct a verdict in favor of the plaintiff on the ground that it was a bona fide purchaser of the note for value, that the note was obtained by fraud, and that as between McLaughlin Bros. and defendants a defense existed, or at least that the evidence was such as required the issue to be submitted to the jury." There was no such concession in this case, and no allegation or evidence of fraud.

It appears from the testimony of the plaintiff's witnesses that the plaintiff in good faith and without notice of an infirmity in the note discounted this note with many others in one transaction, and gave the payees credit for $61,150.40, and that before the plaintiff knew of the

asserted defect in the payees' title, the credit was reduced to less than $30,000.00, showing that at least half of the entire credit of $61,150.00 was withdrawn by the payees, which constituted value for the note, it being one of a number of notes embraced in one discount transaction resulting in the $61,150.40 credit, the withdrawals covering a large portion of the aggregated credit resulting from the one transaction.

If a mere credit upon the books of a bank does not of itself amount to the payment of a valuable consideration, the withdrawal by check of a substantial part of the amount so credited is such payment. First National Bank of West Minneapolis v. Persall, 110 Minn, 333, 125 N. W. Rep. 506, 675; First National Bank of Minneapolis v. McNairy, 122 Minn. 215, 142 N. W. Rep. 139; Bank v. McNair, 114 N. C. 335, 19 S. E. Rep. 361.

The testimony of the plaintiff's witness as to his knowledge that payment of value for the note had been made to the payees who endorsed the note to the plaintiff was positive and uncontroverted, and the sheet from the "loose leaf" ledger was not irrelevant and being merely cumulative evidence of payment, its use in evidence was not harmful under the circumstances. Nor was the truth of such evidence inherently or apparently improbable; and nothing in the record discredits such evidence of payment.

There being no conflicting testimony, it was not necessary to submit the case to the jury when the evidence clearly showed the right of the plaintiff to a judgment in its favor. See First Nat. Bank of Wellington v. Person, 101 Minn. 30, 111 N. W. Rep. 730.

As the evidence adduced would not have supported a verdict for the defendant, and as no material or harmful error was committed in admitting or excluding evidence,

a directed verdict for the plaintiff was proper. See Berryhill-Cromartie Co. v. Manitowot Shipbuilding & Dry Dock Co., 66 Fla. 170, 63 South. Rep. 720; Tedder v. Fraleigh-Lines-Smith Co., 55 Fla. 496, 46 South. Rep. 419.

Affirmed.

TAYLOR, C. J., and SHACKLEFORD and ELLIS, JJ., concur.

COCKRELL, J., takes no part.