PHOENIX MORTGAGE & LOAN COMPANY, a corporation organized, created and existing under the laws of the State of Florida, *Appellant*, vs. J. W. MARTIN and EMMA MARTIN, his wife, *Appellees*.

136 So. 673.

En Banc.

Opinion filed September 30, 1931.

*Stapp, Gourley, Vining & Ward,* for Appellant;

No appearance for Appellees.

BUFORD, C.J.—This was a suit to foreclose a mortgage securing the payment of three promissory notes for $500.00 each. The suit was brought by one claiming to be an endorsee of the notes and assignee of the mortgage for value before maturity. The defense was that the mortgage was not executed, in the manner and form in which it appears, by the defendants but was executed in blank to be later completed if the necessity therefor should arise by the defendant Martin becoming indebted to one Prueitt for legal services. The defendants by their answer plead no consideration and failure of consideration for the execution of the notes and deny that the complainant is holder thereof in due course for value.

Testimony was taken by depositions and before a master to whom the cause was referred for taking testimony and for findings of law and fact.

Upon the coming in of the report of the master exceptions were filed by the defendants. The controlling question presented by the appeal for the determination of this Court is whether or not the order of the chancellor as embraced in the third paragraph of his order of July 18th, 1930, was erroneous. The part of the order under consideration is as follows:

"It is in evidence and not disputed that J. W. Martin, one of the defendants, is an ignorant man not able to read or write, except that he is able to write his own name; that he employed Moman Pruiett, a lawyer, to represent him (Martin) at a coroners inquest in Homestead, Florida. There is testimony to the effect that Martin paid Pruiett $800.00 in cash and promised $200.00 more for such services. It is also in the testimony that Pruiett demanded $2500.00 for representing Martin in the homicide case, and Martin admits that he agreed to pay the additional sum of $1500.00 if the case went to the Supreme Court, meaning the Circuit Court. It appears from the testimony that the coroners' jury returned a verdict of justifiable homicide and that Mar-

tin was released, but that Pruiett insisted that Martin should come to Miami and sign the mortgage. Martin and his wife Emma say they came to Miami with some others and went to Pruiett's house on Saturday night where they signed the notes and an instrument which they say was in blank. The notes offered in evidence are dated October 2, 1925, while the mortgage is dated October 3, 1925, and the acknowledgment is also dated October 3, 1925. A reference to Stearns United States Calendar in Vol. V, Compiled General Laws of Florida, 1927, at page 4215, shows that October 2, 1925, was Friday, and therefore Saturday would be the 3rd. The variance, however, between the testimony and proof as to the date of the notes does not appear to be material, but in the opinion of the Court the variance between the original notes signed by the defendants J. M. Martin and Emma Martin, and copies in the mortgage is material. The original notes are made out upon blanks evidently furnished by the Citizens Bank of Homestead, Florida. The notes attached to the mortgage, Complainant's exhibit 'D' to the bill of complaint, were evidently procured from a bank in Miami, and the scrivener who framed the mortgage evidently intended, by striking out, interlineation, and otherwise to make the copies correspond to the original. But this was not done, as a comparison of the copies attached to the mortgage and the original notes will show. Even exhibits 'A', 'B' and 'C' purporting to be copies of the original notes, are not in fact true copies. These variations, though slight, should have been sufficient to have put H. C. Thompson, the assignee, on notice as to defects in the mortgage, and hence, he and his assignee cannot claim to be innocent purchasers of negotiable instruments for value and without notice.''

We find nothing on the face of the notes which indicates that there was anything irregular about the execution thereof. It is true that the record shows slight variances between the notes attached to the mortgage as copies of the original notes, and the original notes as introduced in evidence. The copies bear the same date as do the originals although the mortgage is dated on the following day. The copy of note number one attached to the mortgage is

marked "No. 1" while the original note does not appear to be numbered. The copy attached to the mortgage promises payment "four months" after date while the original promises payment "4 months" after date. The due date endorsed on the copy is "February 2nd, 1926" while on the original it is "4 mos. from date". In the copies the words, "payable semi-annually" referring to interest, are interlined and also appear in the printed form. In the original notes these words do not appear interlined but do appear in the printed form.

Like variance appears as between the copies of the other two notes as shown in the mortgage and the originals.

We are unable to agree with the learned chancellor that the variances apparent as above stated are sufficient to constitute a material variance between the original notes signed by the defendants and the copies appearing in the mortgage such as to have put the assignee on notice as to defects in the mortgage and to preclude such assignee being an innocent purchaser of a negotiable instrument for value and without notice. This question of law is controlled by statute, being a part of our negotiable instruments law. Section 4729 R. G. S., 6815 C. G. L. provides as follows:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

In Bland vs. Fidelity Trust Co., 71 Fla. 499, 71 Sou. 630, it was held:

"Where there is no evidence of a defect in the title of a payee to a negotiable note, a presumption exists in favor of an endorsee as a holder in due course."

Section 4732 R. G. S., 6818 C. G. L., provides as follows:

"Every holder is deemed *prima facie* to be holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some per-

son under whom he claims acquired the title as a holder in due course. But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

Aside from the statutory presumption, the complainant in this case has successfully maintained by the evidence that it was the holder in due course for value.

The three notes attached to the bill of complaint and made a part thereof are admitted by the answer to have been executed by the defendants as they are pleaded. Those notes are identified by the evidence to have been the identical notes which the mortgage was executed and delivered to secure. The security followed the notes. There is no contention that the notes were not properly and regularly executed by the defendants. Defendants may have had a good and valid defense against Pruiett but the notes were negotiable instruments and were enforceable in the hands of purchasers for value without notice. Such the complainant appears to have been.

Except as to the matter hereinbefore referred to, the order of the chancellor was in favor of the complainants. This order hereinbefore quoted sustaining exceptions to the report of the master should be reversed and, therefore, it will be unnecessary for additional testimony to be taken.

That part of the order appealed from is reversed with directions that a decree of foreclosure be entered.

Reversed.

WHITFIELD, ELLIS, TERRELL AND DAVIS, J.J., concur.

BROWN, J., dissents.